IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUN LIFE ASSURANCE
COMPANY OF CANADA,                     :

          Plaintiff,               Case No. 3:14-cv-41

    v.                     :

RICHARD E. JACKSON, *et al.*,     JUDGE WALTER H. RICE

          Defendants.      :

---

DECISION AND ENTRY SUSTAINING THE MOTION FOR DISCOVERY
OF EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD FILED BY
SIERRA JACKSON (DOC. #22) AND OVERRULING THE REQUESTS
FOR DISCOVERY FILED BY RICHARD E. JACKSON (DOC. #30, #31,
#33, #35, & #36), CONSTRUED AS MOTIONS FOR DISCOVERY OF
EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD; ORDER TO
THE PARTIES TO FILE, THIRTY (30) DAYS FROM DATE,
SIMULTANEOUS MEMORANDA ADDRESSING THE VIABILITY OF
PLAINTIFF'S INTERPLEADER CLAIM, COUNT III OF THE COMPLAINT
(DOC. #1); SIMULTANEOUS RESPONSIVE MEMORANDA DUE TEN
(10) DAYS THEREAFTER; NO REPLY MEMORANDA SHALL BE FILED.

---

      Sun Life Assurance Company of Canada ("Plaintiff" or "Sun Life") brought

this action under the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1001 *et seq.*, to determine whether Defendant Richard E. Jackson, or

Defendant/Counterclaimant/Crossclaimant Sierra Jackson is the proper beneficiary

of the life insurance policy of decedent Bruce D. Jackson.  This Court has

jurisdiction over ERISA claims pursuant to 29 U.S.C. § 1132(e)(1).

Pending before the Court are Sierra Jackson's Motion for Discovery of Evidence Outside of the Administrative Record (Doc. #22), and five "Requests for Discovery" (Doc. #30, #31, #33, #35, & #36) filed by Richard E. Jackson, which the Court construes as Motions for Discovery of Evidence Outside of the Administrative Record.  For the reasons set forth below, the Court SUSTAINS Sierra Jackson's motion, OVERRULES Richard E. Jackson's motions, and ORDERS the parties to brief the viability of Sun Life's claim for interpleader relief, Count III of the Complaint (Doc. #1).

## I.    **FACTUAL BACKGROUND**

Sun Life is the fiduciary and administrator of the employee welfare benefit plan ("Plan") of Samaritan Health Partners dba Good Samaritan Hospital ("Good Samaritan").  Compl. ¶ 1 (Doc. #1 at 1).  Bruce D. Jackson, an employee of Good Samaritan who held a life insurance policy through the Plan, died on February 27, 2013.  *Id.* ¶ 4 (Doc. #1 at 2); AR at 53 (Doc. #19-2 at 25).  Mr. Jackson had designated his uncle, Richard E. Jackson, as the policy beneficiary.  AR at 56 (Doc. #19-2 at 28).  The benefits payable under the policy were $48,000 in basic life insurance and $191,000 in optional life insurance, totaling $239,000.  AR at 47 (Doc. #19-2 at 19).  On October 2, 2013, Sun Life paid Richard E. Jackson the basic life insurance benefit, and on October 15, 2013, it paid him the optional life insurance benefit.  *Id.* at 79-83 (Doc. #19-3 at 23-27).

2

Sierra Jackson is the daughter of Bruce D. Jackson and the personal representative of his estate. Compl. ¶¶ 6-7 (Doc. #1 at 2); Def. Answer ¶ 1 (Doc. #4 at 1). She was born on February 9, 1995, and had, therefore, turned 18 shortly before Bruce Jackson died. Pl. Answer ¶ 1 (Doc. #6 at 1). At the time of her father's death, Sierra attended high school in Troy, Ohio. Def. Answer ¶ 12 (Doc. #4 at 6).

Sierra Jackson's parents filed a separation agreement ("Separation Agreement") on January 13, 2006, that required both of them to name her as the beneficiary of any life insurance policy provided by their employers until she reached the age of 18 or graduated from high school. Compl. ¶ 16 (Doc. #1 at 3-4). On August 28, 2013, through counsel, Sierra notified Sun Life of the existence of the Separation Agreement and the obligation it had imposed on Bruce Jackson to designate her as the beneficiary of any life insurance policy. Def. Answer Ex. 2 (Doc. #4-2). Her attorney also made "a formal request" for the policy and all the claim forms required to submit claims for the life insurance benefits. *Id.* Sun Life admits that it received the letter from Sierra's Counsel, but asserts that the letter "failed to comply with Sun Life's claims submission procedure as outlined in its Policy." Pl. Answer ¶ 19 (Doc. #6 at 9). After Sierra's attorney learned that Sun Life had distributed the life insurance benefit to Richard E. Jackson, he again requested a copy of the policy in a letter that the company received on November 19, 2013. *Id.* ¶ 24 (Doc. #6 at 11).

3

## II.     PROCEDURAL BACKGROUND

On February 6, 2014, Sun Life filed a three-count Complaint in this Court,

naming Sierra Jackson, individually and as representative of the Estate of Bruce D.

Jackson, and Richard E. Jackson as Defendants.  Compl. (Doc. #1).  In Count I,

Sun Life alleged that it had brought the action as an ERISA fiduciary under 29

U.S.C. § 1132(a)(3), seeking an injunction that would prevent "Richard E. Jackson

from dissipating the Plan Benefits" and order him to deposit them "with the

registry of this Court pending a final determination as to which of the Defendants

is entitled to the Plan Benefits."  *Id.* ¶¶ 21-25 (Doc. #1 at 5).  In Count II, brought

under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Sun Life sought "a

declaration by the Court as to the proper recipient of the Plan Benefits."  *Id.* ¶¶ 25-

37 (Doc. #1 at 6-7).  Count III was "a claim for interpleader relief pursuant to Fed.

R. Civ. P. 22 and 28 U.S.C. § 1335," in which Sun Life asserted that it was

unable to determine the proper beneficiary of Bruce D. Jackson's life insurance

policy "without assuming the risk of determining doubtful questions of fact and

law," thereby exposing itself to the risk of multiple liability.  *Id.* ¶¶ 37-40 (Doc. #1

at 7).

On February 27, 2014, Sierra Jackson filed an Answer to the Complaint, in

which she asserted affirmative defenses, counterclaims, and a crossclaim.  Doc.

#4.  Therein, she alleged that her parents' Separation Agreement constituted a

Qualified Domestic Relations Order ("QDRO") under ERISA that Sun Life had

4

unlawfully violated when it distributed the life insurance proceeds to Richard E. Jackson. Def. Answer ¶¶ 6-7 (Doc. #4 at 2-3). According to Sierra, a Sun Life representative had contacted her attorney on November 4, 2013, and stated that the company considered the $239,000 distribution to Richard E. Jackson "the full and complete payment of life insurance benefits due" under her father's life insurance policy. *Id.* ¶ 22 (Doc. #4 at 8-9). Her affirmative defenses stated that Sun Life's interpleader claim failed as a matter of law because it was not a disinterested stakeholder and had not deposited any sum of money or provided a bond to the Court. *Id.* ¶¶ 11-14 (Doc. #4 at 3-4).

Sierra also asserted three counterclaims against Sun Life. First, she sought a declaration under 28 U.S.C. § 2201 that she is the only lawful beneficiary of her father's life insurance policy, and that Sun Life's payment of the proceeds to Richard E. Jackson did not discharge its fiduciary duty to her. *Id.* ¶¶ 26-27 (Doc. #4 at 9). Second, she stated a claim for recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking an order to pay her $239,000 in benefits. *Id.* at 28-30 (Doc. #4 at 9-10). Third, she sought civil penalties under ERISA, 29 U.S.C. § 1024(b)(4), based on allegations that Sun Life ignored her requests for copies of her father's insurance policy and the necessary documents to make a claim for benefits. *Id.* ¶¶31-36 (Doc. #4 at 10-11). Sierra also asserted a crossclaim for conversion against Richard E. Jackson, alleging that he wrongfully exerted dominion and control over the life insurance proceeds to which she is entitled. *Id.*

5

¶¶ 37-40 (Doc. #4 at 11-12).  As relief, she sought judgment in her favor against Richard E. Jackson for $239,000.  *Id.*

Sun Life filed an Answer to Sierra's Counterclaims on March 30, 2014. Doc. #6.  Therein, Sun Life denied that the Separation Agreement constituted a QDRO under ERISA, and alleged that Sierra's attorney had failed to comply with the proper procedure for submitting a claim.  Pl. Answer ¶¶ 16 & 19 (Doc. #8-9).

Defendant Richard E. Jackson has not filed an Answer.  Proceeding *pro se*, he has sent several letters to the Court seeking to be dismissed from this action, which have been docketed as Motions by the Clerk, and overruled by the Court. Doc. #3; Doc. #11.

On June 20, 2014, Sun Life filed the Administrative Record ("AR") with the Court.  Doc. #19.

On July 17, 2014, Sierra Jackson filed a Motion for Discovery Outside the Administrative Record.  Doc. #22.  In support of her motion, she made several arguments.  First, the Administrative Record is incomplete because it does not include the copy of her parents' Separation Agreement sent by her attorney to Sun Life on August 28, 2013.  *Id.* at 9-10.  Second, "as a matter of ERISA due process," Sun Life was required to consider the Separation Agreement as a QDRO, and its failure to supply any record of its efforts to do so entitles her to discovery that is relevant to her second and third counterclaims.  *Id.* at 11-12.  Third, as both an insurer and administrator that may face double liability for the competing

6

claims, Sun Life has a conflict of interest that potentially affected its denial of Sierra's claim and the ultimate composition of the Administrative Record, as evidenced by the fact that "the record inaccurately suggests that Sun Life had not received the QDRO before it denied her claim." *Id*. at 12-14. Because her counterclaims alleged that Sun Life violated her rights by failing to provide her with the documents necessary to file a claim, they are relevant subjects of discovery. *Id.* Finally, Sun Life treated her claim differently from Richard E. Jackson's claim, demonstrating bias that entitles her to discovery outside the Administrative Record. *Id.* at 14-16.

Sun Life filed a Response in Opposition on August 13, 2014. Doc. #25. Therein, Sun Life argued that there are two only "core issues" before the Court: 1) whether the Separation Agreement qualifies as a QDRO; and 2) if so, whether its remedy provision should be enforced if the parties to it did not satisfy all the terms and conditions of the divorce decree. *Id.* at 2. Because the interpretation of a QDRO is one of law, no additional discovery is required, and Sierra Jackson's requests are "not necessary [or] even appropriate in this case." *Id.* at 3-4. Finally, Sun Life asserted that it had "already produced all of the records in its possession at the time it filed this action," and was not in possession of the August 26, 2013, letter sent by Sierra Jackson's attorney. *Id.* at 4.

Sierra Jackson filed a Reply on August 27, 2014. Doc. #26. Therein, she argued that evidence pertaining to Sun Life's receipt of her claim inquiry that

7

included the QDRO in August, 2013, is material to her right to litigate her counterclaims, particularly because Sun Life is unwilling to stipulate or admit that it received the inquiry. *Id.* at 3. Furthermore, by simply asserting that her counterclaims are irrelevant, Sun Life failed to address her argument that bias, conflict of interest, and denial of due process allow discovery beyond the Administrative Record. *Id.* Sun Life is not a disinterested party because it has not deposited any life insurance proceeds with the Court, as required in a proper interpleader action, and has filed this action "for the sole purpose of defeating [her] claim]" because it faces the possibility of paying out proceeds twice. *Id.* at 6. Finally, the provision of the QDRO relied upon by Sun Life to excuse the denial of her claim, which states that Sierra has a claim against the estate of a parent who fails to satisfy its obligations, is not her exclusive remedy or a waiver of her rights under ERISA. *Id.* at 7-8.

With leave of the Court, Sun Life filed a Sur-Reply to Sierra Jackson's Reply on September 10, 2014. Doc. #28. Therein, Sun Life again stated that the Court need only consider the Separation Agreement in the record to resolve this case, and that discovery concerning "whether and when" it received the decree from Jackson is "completely irrelevant" to those issues. *Id.* at 2-3.

On September 22, 2014, Sun Life filed a Notice of Supplementation of the Administrative Record. Doc. #29. It states that a search of company email records uncovered the August 26, 2013, letter from Sierra Jackson's counsel, as

well as other related emails, that had not formed part of the originally filed
Administrative Record. Sun Life reiterated its position that these documents are
not relevant to the legal issues before the Court, but stated that it wished to
supplement the record that it previously filed. Doc. #29.

To date, Richard E. Jackson has submitted five requests for additional
discovery in letters to Sun Life's attorneys, which the Clerk has docketed as
Motions for Discovery. Doc. #30, #31, #33, #35, & #36. They identify
documents that he believes Sun Life excluded from the Administrative Record.
Doc. #30. They also contain inquiries regarding specific procedures, and question
whether the company followed them when processing his claim. Doc. #31 & #35.

Sun Life filed a Response to the Richard E. Jackson's requests on January 6,
2015, arguing that he filed them after the July 20, 2014, deadline imposed by the
Court for requesting additional discovery. Furthermore, Sun Life stated that it
already provided the documents he seeks in the Administrative Record. Doc. #38.

Mr. Jackson sent a letter to the Court on January 14, 2015, which has been
docketed by the Clerk as a Reply to Sun Life's Response. Doc. #39. Therein, Mr.
Jackson repeated his previous requests, stating that Sun Life "failed to provide the
requested information that is reasonable and necessary." He also criticized Sun

9

Life for not recognizing Sierra Jackson's potentially adverse claim while processing his claim, and again requested to be dismissed from this action.[1]

## III.   ANALYSIS

Presently, the Court identifies three issues that must be resolved. First, whether Sierra Jackson is entitled to conduct discovery outside of the Administrative Record. Second, whether there is a basis for granting Richard Jackson's requests for additional discovery. Third, whether Count III of Sun Life's Complaint should be dismissed for failing to properly state an interpleader claim. As set forth below, only the first two issues are ripe for resolution. The third issue will require additional briefing by the parties and further consideration by the Court.

### A.   Sierra Jackson's Motion for Discovery Outside of the Administrative Record (Doc. #22)

Judicial review of a benefits determination under a plan governed by ERISA is "generally limited" to the record developed during the administrator's review and processing of the claim. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 614 (2013). There is an exception to the limitation on consideration of evidence outside the administrative record when "evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins v.*

_____

[1] The Court again denies this request, and refers Mr. Jackson to the April 25, 2014, letter that explained why it cannot dismiss him from this action. Doc. #14.

*Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). For example, an inherent conflict of interest arises when the same entity "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," and that conflict may be a factor that a court considers when "determining whether the plan administrator has abused its discretion in denying benefits[.]" *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Thus, limited discovery may be justified to uncover evidence of a lack of due process or the plan administrator's bias, but the "mere allegation of bias is not sufficient to permit discovery under *Wilkins'* exception." *Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 807 (6th Cir. 2004).

In *Johnson v. Connecticut General Life Insurance Co.*, 324 F. App'x 459, 462 (6th Cir. 2009), the Sixth Circuit upheld a district court's decision to allow the plaintiff to conduct discovery about a possible conflict of interest, where the insurer that also functioned as the plan administrator had denied life insurance benefits because of preexisting conditions that it later conceded were not part of the decedent's medical history. The court recognized that the type of conflict described by the Supreme Court in *Glenn* "does not mean [] that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan." *Id.* at 467. Nevertheless, where there is "a colorable procedural challenge under *Wilkins*," and "more than a mere allegation of bias," the district court may authorize discovery. *Id.*

11

Here, the Court believes that Sierra has made a colorable procedural challenge that justifies granting her request for discovery.  Sun Life, as both the payor and the administrator that evaluated benefit claims made under Bruce Jackson's policy, possesses the inherent conflict of interest described in *Glenn.* Standing alone, such a conflict might be insufficient to allow discovery outside of the administrative record.  *Johnson*, 324 F. App'x at 467.  However, Sierra has pointed to several pieces of evidence that suggest that Sun Life was on notice of her claim months before it paid benefits to Richard E. Jackson, during the period that it processed his claim, and, at the same time, refused or ignored her attempts to make a claim.  For example, her attorney notified Good Samaritan Hospital, her father's employer, on July 17, 2013, that she wished to make a claim for benefits. The Administrative Record confirms that Sun Life was informed of this contact, as it contains an email from a Good Samaritan Hospital representative to Sun Life, requesting that the insurer's "claims department . . . reach out to" Sierra's attorney about her claim.  AR at 92 (Doc. #19-4 at 8).  Sierra's attorney also directly contacted Sun Life on August 26, 2013, asserting her rights under the Separation Agreement/QDRO and making a "formal request for the claims forms necessary for Ms. Jackson to submit her claims for the life insurance benefits" of her father's policy.  Doc. #4-2 at 2-3.  She alleges that Sun Life ignored her requests and attempts to procure claims forms.  *Id.* at 8.  Sun Life denies these allegations.  Doc. #6 at 10.  The Administrative Record does not, however,

12

address what steps, if any, Sun Life took to address Sierra's claim.  Under *Wilkins*,

she is entitled to limited discovery to find out.  *Wilkins*, 150 F.3d at 619; *see also*

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430-31 (6th Cir. 2006) (nothing

that "[t]he *Wilkins* panel foresaw occasions in which the procedural process of

gathering all pertinent information may have broken down at the administrative

level and directed the courts to permit discovery in those cases").

Resisting discovery, Sun Life argues that it would be irrelevant to the purely

legal issues raised by its claims.  While this may ultimately prove to be the case,

the discovery in question is relevant to Sierra Jackson's counterclaims.  Sun Life's

arguments against expanding discovery focus entirely on its claims and fail to

address, or even acknowledge the existence of Sierra's counterclaims, which are

also at issue in this litigation.  *See* Countercl. Of Sierra Jackson (Doc. #4 at 5-11).

The Court also notes the following.  Sun Life did not include the August 26,

2013, letter or its attachments with the original version of the Administrative

Record that it filed with the Court.  In fact, in its Response to Sierra's Motion, Sun

Life asserted that it had "already produced all of the records in its possession at

the time it filed this action," and that its "Claims Department and Legal Department

did not receive, nor do they have, the original August 26, 2013, letter."  Doc. #25

at 4.  Yet, after Sierra filed the instant motion, Sun Life "engaged in a search of

email records" that "revealed a copy of the August 26, 2013, letter as an

attachment to an email forwarded from the sales department to the claim

department on August 30, 2013, as well as other related emails."  Doc. #29 at 2.

To its credit, Sun Life has supplemented the Administrative Record with these

materials.  *Id.*  However, the results of this later search, which contradict its

insistence that it did not receive the August 26, 2013, letter, make it reasonable to

question Sun Life's previous assurance that it had produced all relevant documents

in the Administrative Record.  For these reasons, Sierra Jackson's motion is

sustained, and the Court will allow her to conduct limited discovery relevant to the

allegations of procedural irregularities and bias raised by her counterclaims.

**B.    Richard E. Jackson's Discovery Requests (Doc. #30, #31, #33, #35, & #36)**

Some of the discovery requests by Richard E. Jackson also touch upon the

procedural issues raised by Sierra's counterclaims.  *See* Doc. #30, #31, #33, #35,

& #36.  For example, in his October 14, 2014, letter to Sun Life's attorneys, he

requested information about the company's "policies and procedures that authorize

[it] to advise or not advise potential claimants of the public availability of death

benefit claim forms on [its] web site," an inquiry relevant to Sierra's claim that Sun

Life refused to provide her with the forms she needed to make a claim.  Doc. #31

at 1.  However, there does not appear to be any justification under *Wilkins* for

allowing many of Mr. Jackson's other discovery requests.  For example, he

requests "[a]ll correspondence by Sun Life to inform [him] of his designation as

beneficiary," and copies of correspondence between Good Samaritan Hospital and

14

Sun Life relevant to Bruce Jackson's life insurance policy. Doc. #30. These requests do not relate to a procedural challenge based on due process or bias that might allow discovery outside the Administrative Record. *Wilkins*, 150 F.3d at 619. Furthermore, they appear to request materials that form part of the existing Administrative Record filed by Sun Life. Mr. Jackson is, of course, entitled to discovery relevant to Sierra Jackson's counterclaims. *See* Fed. R. Civ. P. 26(b)(1) (stating that a party "may obtain discovery regarding any nonprivileged matter that is relevant to *any* party's claim or defense") (emphasis added). However, he himself has not asserted any counterclaim against Sun Life, or a crossclaim against Sierra Jackson (having failed to file an Answer responding to their claims and crossclaims) that would justify expanding discovery under *Wilkins*. Unless he articulates a reason for expanding discovery that is both authorized under *Wilkins* and not duplicative of Sierra's requests, his requests must be denied. His Requests for Discovery, construed as Motions for Discovery Outside the Administrative Record, are, therefore, overruled.

### C. Sun Life's Interpleader Claim, Count III of the Complaint (Doc. #1 at 7)

Sun Life has expressly pleaded Count III of the Complaint "as a claim for interpleader relief pursuant to Fed. R. Civ. P. 22 and 28 U.S.C. § 1335." Compl. ¶¶ 38-40 (Doc. #1 at 7). The company alleges that it "claims no beneficial interest in the Plan Benefits, except for the recovery of its reasonable attorneys'

15

fees and costs incurred in bringing this action for interpleader." *Id*. Furthermore, Sun Life requests an order "prohibiting Richard E. Jackson from dissipating any Plan Benefits" and ordering him "to pay said Plan Benefits into the registry of this Court pending a determination of the proper receipt of said funds[.]" *Id*.

In her Answer, Sierra Jackson pleads affirmative defenses against Sun Life's interpleader claim. According to her, the interpleader claim fails to state a claim upon which relief may be granted because Sun Life is not a disinterested stakeholder, and it has failed to deposit or provide bond for $239,000, as required by 28 U.S.C. § 1335. Answer ¶¶ 11-14 (Doc. #4 at 3-4). Although Sierra has not moved for dismissal of the interpleader claim, she has raised these issues in other briefings before the Court. In her Motion for Discovery of Evidence Outside of the Administrative Record, she asserts that that Sun Life's conflict of interest is evident because it "faces the prospect of paying [benefits] twice with no assurance that it can recoup the funds that it paid to Richard Jackson." Doc. #22 at 13-14. In her Reply Brief, she argues that this potential double liability demonstrates that Sun Life is not a disinterested stakeholder, as required for an interpleader action, and again points out that the company has failed to deposit any proceeds with the Court. Doc. #26 at 5-6. These arguments raise problems with Sun Life's interpleader claim that must be addressed.

"Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property

16

that is under his control a procedure to settle the controversy and satisfy his

obligation in a single proceeding.'" *United States v. High Tech. Prods., Inc.*, 497

F.3d 637, 641 (6th Cir. 2007) (quoting 7 Charles Alan Wright, Arthur R. Miller, &

Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed. 2001)).  There are

two types of interpleader actions, referred to as "statutory interpleader" and "rule

interpleader," that may be brought in federal court.  Statutory interpleader may be

brought under 28 U.S.C. § 1335, which provides district courts with "original

jurisdiction of any civil action of interpleader or in the nature of interpleader" upon

satisfaction of three conditions.  First, there must be "money or property of the

value of $500 or more" that is in the "custody or possession" of the interpleading

plaintiff.  28 U.S.C. § 1335(a).  Second, there must be "[t]wo or more adverse

claimants, of diverse citizenship . . . [that] are claiming or may claim to be entitled

to such money or property[.]" *Id.* § 1335(a)(1).  Third, the plaintiff must have

"given bond payable to the clerk of the court" or "deposited such money or

property . . . into the registry of the court[.]" *Id.* § 1335(a)(2).

In spite of Sun Life's invocation of 28 U.S.C. § 1335, none of these

conditions appear to have been satisfied.  First, the "money or property" in

question, the $239,000 life insurance benefit, was not in Sun Life's "custody or

possession" at the time it filed this action, as it had already paid the benefit to

Richard E. Jackson.  Second, although it appears undisputed that Sierra Jackson

and Richard E. Jackson are "of diverse citizenship," it is not clear that they are

"adverse claimants" under the statute.  The statutory language states that the diverse claimants must both be "claiming or may claim to be entitled to such money," but Sierra Jackson is the only one of the two that is *currently* making a claim against Sun Life.  Richard E. Jackson made a claim on August 8, 2013, and, by October 15, 2013, Sun Life had honored the claim in full.  AR at 49, 79-83 (Doc. #19-2 at 21, Doc. #19-3 at 23-27).  He is not now claiming, nor will he claim, what he has already received.  Third, Sun Life has not deposited any money with the registry of the Court, or given any bond payable to the Clerk, as required by the statute.  Because of these deficiencies, Sun Life's statutory interpleader claim under 28 U.S.C. § 1335 is vulnerable to being dismissed for failing to state a claim upon which relief may be granted.

The second type of interpleader action, "rule interpleader," depends on Rule 22 of the Federal Rules of Civil Procedure, which states that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead[.]"  The rule "provides a procedural framework for interpleader actions, but it does not confer subject matter jurisdiction on federal courts."  *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997).  Here, ERISA provides the subject matter jurisdiction that Rule 22 cannot confer.  *Id.* (holding that as long as the plaintiff insurer "has standing to assert a cause of action" under ERISA, the court has "subject matter jurisdiction to hear this interpleader action" brought under Fed. R. Civ. P. 22); *see also* 29 U.S.C.

18

§ 1132(e)(1) (granting "exclusive jurisdiction" to federal district courts to hear claims brought under ERISA).

The present concerns over the viability of Sun Life's interpleader claim, however, do not involve the Court's subject matter jurisdiction. Rather, they concern whether this action should include any interpleader claim at all, whether brought under Rule 22 or under the interpleader statute. As discussed above, Sun Life was not in possession of the specific money or fund in question when it brought this action. Apart from being a deficiency under the interpleader statute, this lack of possession calls into question Sun Life's ability to bring any type of interpleader claim, because courts define interpleader as an action to determine which claimant is legally entitled to an amount of money or piece of property *held by the plaintiff*. *E.g.*, *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) ("Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property *that is under his control* a procedure to settle the controversy and satisfy his obligation in a single proceeding.'") (quoting 7 Wright, Miller, & Kane, *supra* § 1704) (emphasis added); *In re Millennium Multiple Employer Welfare Ben. Plan*, 772 F.3d 634, 639 (10th Cir. 2014) (stating that "interpleader suits are focused on adverse claims to a single, identifiable stake, or res, *that is under the control of the interpleader plaintiff* and can be delivered to the registry of the court") (emphasis added). Here, Sun Life neither controls nor possesses the funds

in question, having paid them to Richard E. Jackson before filing this action. Instead of depositing any funds with the Court, Sun Life requests that the Court order Mr. Jackson to do so. The Court is skeptical that interpleader provides any legal basis for issuing such an order.

Under indistinguishable circumstances, the same request was rejected in *Lincoln National Life Insurance Co. v. Barton*, 250 F.R.D. 388 (S.D. Ill 2008). In *Lincoln National*, an insurer paid life insurance benefits to a claimant, only to later receive two other claims for the same benefits. After it denied the new claims, the insurer unsuccessfully attempted to regain the money paid to the original claimant. *Id.* at 389. When she refused, the insurer filed an interpleader action, seeking an order that the first claimant tender the life insurance benefits to the clerk so the court could determine the proper beneficiary. *Id.* The court noted that the case could not proceed as a statutory interpleader action under 28 U.S.C. § 1335 because the insurer had failed to deposit any proceeds. *Id.* The court also rejected the insurer's argument that because it was "faced with competing claims" and "exposed to double liability," interpleader was appropriate under Rule 22. *Id.* The court noted that the insurer had "already paid the money out," and if it had been "unsure of whether it should pay the proceeds to [the first claimant], it should have filed an interpleader action *before* it paid out the money." *Id.* (citing *Taylor v. Kemper Fin. Servs. Co.*, No. 98-C-0929, 1999 WL 782027 (N.D. Ill. Sept. 27, 1999)). Thus, the insurer was "not a *stakeholder* faced with rival claims." *Id.*

20

Here, too, Sun Life is an insurer that paid out a claim, only to find itself faced with another claim for the same benefits. Like the insurer in *Lincoln National*, it has asserted an interpleader claim without depositing any sum with the Court, asserting instead that it is entitled to an order compelling the beneficiary to make the deposit that an interpleader action typically requires of the plaintiff. As in *Lincoln National*, Sun Life's status as a "stakeholder" is questionable. Having paid the benefits to Richard E. Jackson, it relinquished the stake in question. In other words, it holds no identifiable sum in which it claims no interest, and does not bring this action with only an intention to obtain guidance about the distribution of a sum in its possession. Instead, Sun Life has a clear interest in not having its own assets diminished if Sierra prevails on her counterclaim. This possibility calls into doubt Sun Life's professed role as a neutral interpleading plaintiff. In short, the Court questions the propriety of allowing an interpleader action to continue where the benefits that represent the "stake" have already been disbursed. *Lincoln National*, 250 F.R.D. at 389; *see also Taylor*, 1999 WL 782027 at *4 (dismissing interpleader counter- and crossclaims by ERISA fiduciary that had already erroneously paid retirement and pension account proceeds to trustee of decedent's trust); *USAA Inv. Mgmt. Co. v. Connell*, No. 1:13-cv-911, 2014 WL 2176283 (N.D.N.Y. May 22, 2014) (dismissing interpleader action brought by insurer against competing beneficiaries to retirement account because insurer did

21

not deposit funds with court, having disbursed them to a claimant before filing suit).

Although the viability of its interpleader claim is in question, the Court notes that in Count I of its Complaint, Sun Life has separately stated a claim for relief under 29 U.S.C. § 1132(a)(3) of ERISA, which authorizes a fiduciary to bring an action "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions [ERISA] or the terms of the plan[.]" If Sun Life can demonstrate that it seeks to impose "a constructive trust or equitable lien on a specifically identified fund" in the possession of Richard E. Jackson, based on a Plan provision that it seeks to enforce, it may prevail in obtaining the same relief sought in its interpleader claim. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006); *see also Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 39 (6th Cir. 2007) (upholding plan administrator's recovery of overpayments stemming from beneficiary's receipt of Social Security benefits under 29 U.S.C. § 1132(a)(3)(B)); *Adams v. General Motors Co.*, 547 F. App'x 661 (upholding employer's recovery of improperly paid pension benefits and noting that "if the administrators mistakenly disperse the plan's limited funds, they have a duty to seek their return" under 29 U.S.C. § 1132(a)(3)(B)).

The foregoing discussion represents the Court's preliminary assessment of the viability of Sun Life's interpleader claim. This assessment is preliminary

22

because the Court has not had the benefit of briefing from the parties on the issue.
At this stage of the litigation, the Court has an obligation to determine the
propriety of an interpleader proceeding, and has therefore set out the foregoing
assessment with the intention of putting Sun Life on notice of the claim's
deficiencies and its possible dismissal. *See United States v. High Tech. Prods.,
Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (describing interpleader as an action that
"typically proceeds in two stages," the first of which requires a court to
"determine[] whether the stakeholder has properly invoked interpleader") (citing 7
Wright, Miller, & Kane, *supra* § 1714).  The Court will order briefing on the issue,
as set forth below, and, after consideration of the parties' arguments, it will make
a final determination on the viability of Sun Life's interpleader claim.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Sierra Jackson's Motion for Discovery of
Evidence Outside of the Administrative Record (Doc. #22) is SUSTAINED.  The
Court authorizes discovery relevant to her counterclaims alleging a lack of due
process in the consideration of her benefits claim and bias on the part of Sun Life.
The five "Requests for Discovery" (Doc. #30, #31, #33, #35, & #36) filed by
Richard E. Jackson, construed as Motions for Discovery of Evidence Outside of the
Administrative Record, are OVERRULED.  However, Richard E. Jackson is entitled
to fully participate in the limited discovery described above .

The parties are ORDERED to file simultaneous memoranda, thirty (30) days from date, addressing the issues raised herein regarding Sun Life's interpleader claim.  Simultaneous responsive memoranda are due ten (10) days thereafter, with no reply memoranda to be filed.

Date: February 9, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE