IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUN LIFE ASSURANCE
COMPANY OF CANADA,                    :

       Plaintiff,                           Case No. 3:14-cv-41
                                      :
  v.                                    JUDGE WALTER H. RICE

RICHARD E. JACKSON, et al.,
                                      :
       Defendants.

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT SIERRA N. JACKSON'S MOTION FOR JUDGMENT
(DOC. #51); SUSTAINING IN PART, OVERRULING IN PART AND NOT
RULING UPON IN PART SUN LIFE ASSURANCE COMPANY OF
CANADA'S MOTION FOR JUDGMENT (DOC. #50); AND OVERRULING
RICHARD E. JACKSON'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD (DOC. #53), ALL WITH REASONING AND
RELIEF ORDERED SET FORTH HEREIN; OVERRULING AS MOOT
SIERRA JACKSON'S MOTION TO STRIKE RICHARD JACKSON'S
JANUARY 2, 2016, LETTER WITH ATTACHMENTS (DOC. #61);
SUSTAINING SIERRA JACKSON'S MOTION TO DISMISS
CROSSCLAIM AGAINST RICHARD JACKSON WITHOUT PREJUDICE
(DOC. #62); DIRECTIONS TO PARTIES; JUDGMENT SHALL
ULTIMATELY ENTER IN FAVOR OF SIERRA JACKSON AND AGAINST
SUN LIFE AND RICHARD JACKSON

---

       This matter is before the Court on cross-motions for judgment by Plaintiff Sun

Life Assurance Company of Canada ("Plaintiff" or "Sun Life"), Doc. #50, Defendant,

Counter-Claimant and Cross-Claimant Sierra N. Jackson ("Sierra"), Doc. #51, and

Defendant Richard E. Jackson ("Richard"). Doc. #53. Sun Life seeks a declaratory

judgment that it properly paid proceeds of an insurance policy managed by Sun Life

("Policy") on the life of a Bruce Jackson ("Bruce") to Richard, Bruce's uncle. In the

alternative, it seeks to enjoin Richard from dissipating the Policy proceeds and to obtain

other equitable relief against Richard. Doc. #1. Sierra, Bruce's daughter, seeks a declaratory judgment that she was the proper payee of the Policy proceeds. Also, she seeks recovery of those proceeds, and statutory damages against Sun Life for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 *et seq.* Doc. #4. Richard, appearing *pro se*, seeks damages, including attorney fees, to compensate him for the "loss of production time and income-generating resources." Doc. #53, PAGEID #954. Also, Sierra moves to strike a letter filed by Richard with the Court on January 2, 2016, Doc. #59, which she claims contains inadmissible evidence. Doc. #61. Finally, Sierra moves, pursuant to Rule 41(a)(2), to dismiss without prejudice her crossclaim against Richard. Doc. #62. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons set forth below, Sierra's motion for judgment is OVERRULED with respect to her claim for statutory damages and SUSTAINED in all other respects. Sun Life's motion for judgment is OVERRULED with respect to its claim for declaratory judgment, and is SUSTAINED IN PART and NOT RULED UPON IN PART with respect to its claim for injunctive relief against Richard. Richard's motion for judgment on the administrative record is OVERRULED. Sierra's motion to strike is OVERRULED AS MOOT, and her motion for voluntary dismissal of her crossclaim against Richard is SUSTAINED.

## I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bruce and Bridget L. Jackson ("Bridget") married on December 31, 1993, and Sierra, the only child of the marriage and Bruce's only child, was born on February 9,

2

1995. Doc. #29-1, ¶¶ 3-4, PAGEID #576. Beginning on or about November 1, 2003,

Bruce, at the time an employee of Samaritan Health Partners, now a division of Premier

Health Partners ("Employer" or "Premier"), began to participate in an employee benefit

plan sponsored by Premier and governed by ERISA ("Plan"). The Plan included the

Policy, which came under the management of Sun Life as of January 1, 2008. Doc.

#19-1, PAGEID #254-81, Doc. #19-2, PAGEID #282-301. The Policy provided for

$48,000 in basic benefits and $191,000 in optional, or supplemental, benefits. Doc.

#19-2, PAGEID #300. Bruce designated Richard as the beneficiary of the Policy. *Id.*,

PAGEID #309.

On January 20, 2006, a final Judgment Entry - Decree of Divorce was entered in

the Miami County, Ohio, Court of Common Pleas as between Bridget and Bruce

("Decree" or "Jackson Decree"). Doc. #29-1, PAGEID #576. The Decree included a

provision that Bruce and Bridget would "be spending near equal time with the child." *Id.*,

¶9, PAGEID #577. The Decree incorporated by reference a Separation Agreement and

Shared Parenting Plan ("Separation Agreement"), which was entered into by Bridget

and Bruce on January 13, 2006. *Id.*, PAGEID #576, 585. Article IX of the Separation

Agreement mandated that:

> In order to secure the obligation of the parties to support their child during
> her minority, [Bruce and Bridget] shall maintain, unencumbered, all
> employer-provided life insurance, now in existence at a reasonable cost,
> or later acquired at a reasonable cost, naming their minor child as primary
> beneficiary during her minority, and the obligation to do so shall continue
> until she (a) reach(es) the age of eighteen (18) or graduates from high
> school, whichever occurs last. . . .

*Id.*, PAGEID #590. Despite this mandate, Bruce never changed the beneficiary of the

Policy from Richard to Sierra.

3

On February 27, 2013, prior to Sierra graduating from high school, Bruce died. Doc. #19-2, PAGEID #306; Doc. #19-5, PAGEID #396. On July 17, 2013, James D. Brookshire ("Brookshire"), counsel for Sierra, wrote a letter to Sherry Jenkins ("Jenkins"), Employee Benefits Manager for Premier, in an attempt to make a claim for benefits under the Policy. Doc. #19-4, PAGEID #360-61. Brookshire asked Jenkins to provide "any and all forms necessary to claim the basic life insurance benefits and supplemental life insurance benefits." *Id.*, PAGEID #361. On July 19, 2013, Jenkins informed Sun Life National Account Manager Sarah Victory ("Victory") of the correspondence from Brookshire, and also notified Sun Life that Richard, the listed beneficiary, had not yet made a claim for benefits. *Id.*, PAGEID #341-42. On July 30, 2013, Lisa Larson ("Larson"), the Sun Life employee responsible for claims under the Policy, spoke with Bruce's mother, who informed Larson that Sierra had "already set up the estate for [Bruce]." *Id.*, PAGEID #340. That same day, Larson sent a letter to Jenkins and Richard, requesting additional information with respect to Bruce's death and beneficiary designations. Doc. #19-3, PAGEID #322-23. On August 8, 2013, Richard submitted a Death Benefits Claim Packet to Sun Life. *Id.*, PAGEID # 326.

On August 26, 2013, Brookshire sent a letter via certified mail to Victory, renewing Sierra's claim for benefits. Doc. #29-1, PAGEID #574. Brookshire argued that other claims for the Policy proceeds were invalid, because the Decree was a Qualified Domestic Relations Order ("QDRO") under ERISA, and Article IX of the Separation Agreement required Bruce to designate Sierra as the beneficiary. *Id.*, PAGEID #574-75. Thus, Brookshire claimed, under ERISA, Sierra was the lawful beneficiary of the Policy proceeds. *Id.*, PAGEID #575. Brookshire asked for the forms

4

necessary to complete Sierra's claim, *id.*, and attached file-stamped copies of the Decree and Separation Agreement. Doc. #29-1, PAGEID #576-94. On September 12, 2013, Larson again wrote to Richard and Jenkins, asking for the certified original death certificate and proof, if any, that Bruce had designated Richard as the beneficiary for the Policy's optional proceeds. Doc. #19-3, PAGEID #327-29. On September 24, 2013, Richard sent a certified copy of the death certificate to Larson, Doc. #19-2, PAGEID #306; Doc. #19-3, PAGEID #331, and on October 2, 2013, Sun Life paid the Policy's basic proceeds of $48,784.77 (including interest) to Richard. Doc. #19-3, PAGEID #332-34. In an October 10, 2013, email, Jenkins informed Victory that the "basic life beneficiary that [is] printed on our forms [is] also applicable for the optional life beneficiary." Doc. #19-4, PAGEID #349 (emphasis removed). Thus, because "Bruce name[d] his beneficiary as 100% primary to Richard Jackson[, t]his would be applicable for the basic and optional life benefit." *Id.* Victory forwarded Jenkins's email to Larson, and on October 15, 2013, Sun Life paid the Policy's optional proceeds of $194,309.79 (including interest) to Richard. Doc. #19-3, PAGEID #335-37.

On November 4, 2013, Joanna Bouthot ("Bouthot"), Sun Life's Manager of Group Life Claims, informed Brookshire that Sun Life had paid the entire Policy proceeds to Richard. Doc. #19-4, PAGEID #354. On November 19, 2013, Brookshire sent an email to Bouthot, claiming that "[a]s a matter of law, the August 26, 2013[,] notice of Ms. Jackson's claim was effective when Sun Life's Cleveland office received it on August 28, 2013." *Id.*, PAGEID #355. Having received Sierra's claim, Brookshire argued, "Sun Life was required to evaluate Ms. Jackson's claims prior to paying any money to Richard Jackson." *Id.*, PAGEID #356. Brookshire again claimed that the Decree was a

QDRO, and thus Sierra "has been and remains the sole <u>lawful</u> beneficiary of the Sun Life insurance policies." *Id.*, PAGEID #358 (emphasis in original). Brookshire requested copies of the Policy, the contact information for the Policy's payee and information about the process, if any, by which Sierra could appeal the denial of her claim. *Id.*, PAGEID #358-59. Sun Life filed the present action in this Court on February 6, 2014, seeking a declaratory judgment that it properly paid the Policy proceeds to Richard, and also seeking injunctive relief and interpleader relief. Doc. #1. On February 27, 2014, Sierra filed an answer and counterclaim against Sun Life for judgment, seeking: a declaratory judgment that she was the lawful Plan beneficiary; recovery of benefits; statutory damages; and attorney fees. Doc. #4. Also, Sierra filed a crossclaim against Richard for conversion. *Id.* On June 2, 2015, the Court sustained Sun Life's motion for voluntary dismissal of Count III (Interpleader Relief) of Sun Life's Complaint. Doc. #46.

## II.    STANDARDS OF REVIEW

### A.    Denial of Benefits

Sierra has raised claims payment for benefits of the Policy proceeds, and for declaratory judgment with respect to those proceeds, both of which are properly brought as claims for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). In a case involving denial of benefits, the factual determinations made by a plan's claims administrator are subject to *de novo* review by this Court, "unless the plan clearly grants to the administrator discretion to construe the terms of the plan or to make benefit determinations." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (citing *Wilkins v. Baptist Healthcare Sys., Inc.,*150 F.3d 609, 613 (6th Cir.1998)).

6

> Normally, when a plan gives its administrator discretion to construe and interpret the plan . . . , a court reviews the administrator's decision on the eligibility of benefits under the "arbitrary and capricious" standard. However, this deferential standard does not apply to a plan administrator's determination of questions of law . . . ; a court reviews those questions *de novo*.

*Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011) (citations omitted). Sun Life, in its motion, concedes that "the central issue [in this case] is one of law," Doc. #50, PAGEID #685 n.1, specifically, whether the Decree is a QDRO. Thus, the Court must review Sun Life's decision to pay the Policy proceeds to Richard, and not Sierra, *de novo*. The Court, in its review, is limited to the materials contained in the administrative record, *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring), unless "evidence outside the record 'is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Johnson v. Connecticut Gen. Life Ins. Co.*, No. 08-3347, 324 F. App'x 459, 466 (6th Cir. 2009) (quoting *Wilkins*, 150 F.3d at 619).

### B. Other Relief Sought

In addition seeking payment of benefits, Sierra seeks statutory damages against Sun Life, and Sun Life seeks a declaratory judgment regarding the proper payee, and, in the alternative, equitable relief against Richard pursuant to 29 U.S.C. § 1132(a)(3). Doc. #1, ¶¶ 22-24, PAGEID #7. As both Sun Life and Sierra "seek[] remedies beyond ERISA plan benefits, . . . a motion for summary judgment [is] the appropriate procedural vehicle." Doc. #50, PAGEID #685 n.1; *accord*: *Craft v. Prudential Ins. Co. of Am.*, No. C2-CV-03-1007, 2006 WL 495972, at *13 (S.D. Ohio Feb. 28, 2006) (Frost, J.)

(evaluating motion for judgment under 29 U.S.C. § 1132(a)(3) as motion for summary judgment).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56 requires the nonmoving party to go beyond the pleadings and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury

8

could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d*, 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). **"**A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). However, if it so chooses, the court may consider other properly presented materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. SUN LIFE AND SIERRA'S MOTIONS

### A. Decree is a QDRO

"ERISA contains a broad preemption clause, the effect of which is generally to trump state law with respect to the designation of beneficiaries under ERISA-controlled insurance policies. However, ERISA exempts from such preemption any divorce decree that constitutes a [QDRO]." *Kent v. Minnesota Life Ins. Co.*, No. 2012-78 (WOB-

9

JGW), 2013 WL 8632345, at *4 (E.D. Ky. Oct. 29, 2013) (citing *Metro. Life Ins. Co. v. Marsh,* 119 F.3d 415, 420, 421 (6th Cir.1997)); *see also* 29 U.S.C. § 1144(a) (preemption), (b)(7) (exception for QDROs). The parties do not dispute that the Policy is controlled by ERISA. Thus, if the decree is not a QDRO, then the language in the Policy naming Richard as the beneficiary preempts Article IX's mandate that Bruce designate Sierra as the beneficiary, and Richard is the proper payee. If, however, the decree is a QDRO, then Article IX's requirement that Sierra be designated as the beneficiary controls, and Sierra is the proper payee. The issue of whether the Decree is a QDRO is a threshold question of law, and one the Court must address before it may evaluate the other arguments raised by the parties. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1150 n.5 (9th Cir. 2000); *see also Seaman v. Johnson*, No. 02-1208, 91 F. App'x 465, 469 (6th Cir. 2004) ("where the proper distribution of assets is arguably controlled by a state-court domestic relations order, the threshold question is whether that order represents a QDRO as defined by 29 U.S.C. § 1056 of ERISA. That initial question is one for the federal courts.").

For the Decree to be considered a QDRO, it must first meet the requirements of a domestic relations order under ERISA. 29 U.S.C. § 1056(d)(3)(B)(ii). The parties do not dispute that the Decree qualifies as a domestic relations order. Second, the Decree must specify:

> (i) [T]he name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
> (ii) [T]he amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
> (iii) [T]he number of payments or period to which such order applies, and

10

(iv) [E]ach plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C).  The Jackson Decree meets the first half of sub-section (i),

by listing Bruce's name and mailing address.  Doc. #29-1, PAGEID #576.  Moreover,

the Decree specifies the period to which Article IX applied:  until the later of Sierra's

eighteenth birthday or her graduation from high school.  *Id*., PAGEID #590.  Such

language satisfies sub-section (iii).

Sun Life claims that the Jackson Decree failed to:  (1) identify Sierra as the

beneficiary; (2) specify the percentage of benefits to be paid to her; (3) list her mailing

address; or (4) name the plan or plans that were to be covered by the decree.  Thus,

Sun Life argues, the Decree failed to comply with part of sub-section (i) and the

entireties of sub-sections (ii) and (iv), and the Decree is not a QDRO.  Doc. #50,

PAGEID #698-99 (citing *Mack v. Mack*, No. 08-11009, 2009 WL 910681, at *4 (E.D.

Mich. Apr. 1, 2009)).  The first two alleged deficiencies are immaterial.  Article IX of the

Decree states that the sole primary beneficiary of any insurance policy on the life of

Bruce and Bridget shall be "their minor child."  Doc. #29-1, PAGEID #590.  As Sierra

was the only child of Bruce and Bridget's marriage, 100% of the benefits of any policy

should be paid to her, thus satisfying sub-section (ii).  For that same reason, the fact

that Sierra was not specifically named in Article IX does not prevent the Decree from

substantially complying with sub-section (i).

With respect to Sierra's mailing address, the Ohio Supreme Court has held that

when a divorce decree, like the Jackson Decree:

> [P]rovides for shared parenting of a child, each parent, regardless of
> where the child is physically located or with whom the child is residing at a
> particular point in time, as specified in the order, is the residential parent,
> the residential parent and legal custodian, or the custodial parent of the
> child.

11

*Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 25

(quoting Ohio Rev. Code § 3109.04(K)(6)) (internal quotation marks omitted). Thus,

Sierra argues, by operation of law, her address is presumed to be the home address of

either Bruce or Bridget, depending on which parent she was staying with at the time in

question. Sun Life counters that Sierra's argument is belied by the administrative

record, which shows that Sierra's home address during his senior year of high school

was different than the respective addresses of Bruce and Bridget listed on the Decree.

Moreover, Bruce's address at the time of his death was different than what was listed on

the Decree. Doc. #57, PAGEID # 985-86 (citing Doc. #19-5, PAGEID #396; Doc. #29-1,

PAGEID #576); Doc. #19-2, PAGEID #306.

The Court in *Marsh* held that, for the purposes of substantial compliance with

sub-section (i), "[t]he decree contains the addresses of the children since it provides the

address of their [parent] in whose custody they were placed." *Marsh*, 119 F.3d at 422.

Similarly, it is undisputed that, at the time of Bruce's death, Sierra was a full-time high

school student who was subject to a shared parenting plan. Thus, the Court finds that

the Jackson Decree, which listed both Bruce and Bridget's names and addresses, also

listed Sierra's address for the purpose of compliance with 29 U.S.C. § 1056(d)(3)(i).[1]

Finally, Sun Life argues that Article IX provides no guidance as to whether "the

Divorce Decree applies to the [Policy], or any other plan or policy. . . . If multiple plans

or policies existed, it would be impossible to know which plan the Divorce Decree was

intended to apply to and override." Doc. #50, PAGEID #697. Thus, Sun Life claims, the

_____

[1] The cases cited by Sun Life, and the cases that cite to *Marsh* for the above proposition, did not disqualify a decree from being a QDRO because the beneficiary, at the time of death, was not residing at the address listed in the Decree.

Decree did not comply with 29 U.S.C. § 1056(d)(3)(iv), and is not a QDRO. *Id.*,

PAGEID #698. Article IX required Bruce and Bridget to designate Sierra as the

beneficiary of "all employer-provided life insurance, now in existence at a reasonable

cost, or later acquired at a reasonable cost." Doc. #29-1, PAGEID #590. Article IX did

not identify any life insurance policy or policies, or even specify Bruce or Bridget's

employers; nor did it specify what constituted "a reasonable cost" for life insurance.

Other courts have found that when a divorce decree omits similar details, that decree is

not a QDRO. *Lavelle v. Lavelle*, No. 1:11-CV-600, 2011 WL 12832312, at *3 (N.D. Ohio

Jul. 12, 2011) (provision that included obligations of parties to "[m]aintain and pay the

premiums for life insurance upon his or her life currently in effect . . ." did not "meet the

minimum requirements of a QDRO," as there was no "ERISA policy specifically

identified in the order."); *Deaton v. Cross*, 184 F. Supp. 2d 441, 444 (D. Md. 2002) ("any

policy of insurance available to him through his employer" was too ambiguous to satisfy

29 U.S.C. § 1056(d)(3)(C)(iv)).

Sierra argues that Sun Life is asking the Court to require literal compliance with

29 U.S.C. § 1056(d)(3)(C)(iv), when substantial compliance is all that is required. Doc.

#51, PAGEID #755 (citing *Mattingly v. Hoge*, No. 07-5253, 260 F. App'x 776, 780 (6th

Cir. 2008); *Metro. Life Ins. Co. v. Clark*, No. 05-1069, 159 F. App'x 662, 665 (6th Cir.

2005); *Marsh*, 119 F.3d at 422). Sierra is correct that the Decree need only substantially

comply with 29 U.S.C. § 1056(d)(3)(C), meaning that  the QDRO "permit[s] identification

of the plan and is not ambiguous. . . . [W]e should not demand literal compliance where

Congress' intent has been to give effect to domestic relations orders where it is clear

what the decree intended." *Marsh*, 119 F.3d at 422. Article IX satisfies all of the *Marsh*

13

requirements. First, the intent of Article IX is apparent on its face: to ensure that Sierra, as the only child of the marriage, was cared for financially in the event of either Bruce or Bridget's death. Second, there is no dispute that Bruce, through the Policy, had insurance provided by his employer on the date of the Decree's entry. There is no record of Bruce having maintained life insurance from previous employers, if any. Therefore, the Policy is readily identifiable as the only "employer-provided life insurance, now in existence." Doc. #29-1, PAGEID #590.

Third, the additional language in the Decree, "at a reasonable cost," and "employer-provided health insurance . . . later acquired," id., do not render the Decree ambiguous, because they do not refer to other plans. Rather, they are properly read as contingencies, none of which materialized. As discussed above, Bruce never changed employers or acquired new Premier-provided insurance after the Decree and Judgment were entered. The phrase "at a reasonable cost," has been litigated mostly when post-decree circumstances (e.g., loss of employer subsidy, age and health of party to decree) have required trial courts to determine whether insurance can be obtained or maintained at a reasonable cost to the party to the decree. See, e.g., Rock v. Rock, 2d Dist. Montgomery No. 25311, 2013-Ohio-390; Vlah v. Vlah, 11th Dist. Geauga No. 97-G-2049, 1997 WL 750812 (Nov. 28, 1997); Pope v. Pope, 6th Dist. Lucas No. L-96-198, 1997 WL 177697 (Apr. 11, 1997); Yost v. Unanue, 109 Ohio App. 3d 294, 296, 299-300, 671 N.E.2d 1374 (5th Dist. 1996). In this case, there is no dispute among the parties as to whether Bruce's payment for the Policy—$16.82 per pay period, Doc. #19-2, PAGEID #308—is a reasonable cost. Nor is there evidence of any event, e.g., loss of employment, which would have made it impossible for Bruce to maintain the Policy at a

14

reasonable cost. In sum, the contingencies listed in the Decree, which <u>could</u> <u>have</u> resulted in uncertainty regarding whether the Policy was covered by the Decree, never occurred, and thus <u>do</u> <u>not</u> render the Decree ambiguous.

As a matter of law, the Decree substantially complied with 29 U.S.C. § 1056(d)(3)(C), is a QDRO, and is exempt from ERISA's broad preemption provision.

### B. Sierra is the Proper Payee of, and Should be Awarded, the Policy Proceeds

Sun Life argues that, even assuming *arguendo* that the Decree is a QDRO, Sierra's motion should be overruled. Doc. #50, PAGEID #703. Sun Life proffers four main supporting arguments, which the Court addresses in turn.

### 1. Sierra's Remedies not Limited to Probate Claim

Sun Life notes that "Article IX of the Divorce Decree states that 'the parties' minor child and the other party shall have a valid claim against the probate estate of a non-compliant party to the extent that this provision has not been fully obeyed.'" Doc. #50, PAGEID #703 (emphasis removed) (quoting Doc. #29-1, PAGEID #591). Sun Life claims that, because the Decree was incorporated into a final judgment, any person who, by the Decree, is afforded a remedy against Bruce's estate for alleged noncompliance by Bruce, is limited to a claim against his estate. *Id*., PAGEID #705-06 (citing *Hohertz v. Estate of Hohertz*, 802 N.W.2d 141, 146 (Neb. App. 2011); *Stadalsky v. Stadalsky*, 8th Dist. Cuyahoga No. 51878, 1987 WL 7885 (Mar. 12, 1987)).

Sierra argues that a limitation of remedy to a claim against Bruce's probate estate is contrary to the plain language of ERISA and the legislative intent of the section

15

on QDROs, which was enacted to "'give _enhanced_ protection to the spouse and dependent children in the event of divorce or separation.'" Doc. #58, PAGEID #1018 (emphasis in original) (quoting _Boggs v. Boggs_, 520 U.S. 833, 847, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997)). Further, Sierra claims, there is no language in the decree that limits her remedy to a claim against the probate estate, and under ERISA, a "QDRO cannot be used solely to _relinquish_ a beneficiary's claim to benefits governed by ERISA." _Id._, PAGEID #1010 (citing _Kennedy v. Plan Admin. For DuPont_, 555 U.S. 285, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009)) (emphasis added).

Sierra's argument is persuasive. The intent of the remedy provision in Article IX is apparent on its face: to provide Sierra with an express remedy against the probate estate of Bruce or Bridget in the case of non-compliance by one or both; Article IX contains no language that would purport to limit Sierra's other remedies, and to read in additional limitations would contravene ERISA's plain language and its legislative intent. Moreover, Sun Life's correct statement of law—that "parties are bound by the remedies and terms of the separation agreement they have agreed upon and entered into," Doc. #50, PAGEID #705 (emphasis added)—undercuts its argument. Sierra was not a party to the Decree; nor did she give up valuable consideration in exchange for limiting her remedies to an action against Bruce's estate. Further, and contrary to Sun Life's assertion, _id._, Sierra is not attempting to assert her rights under the Decree, or attempting otherwise to be bound by it. Rather, Sierra has sought a declaratory judgment that, under ERISA, Article IX is a QDRO, and, consequently, that she is the

16

proper recipient of the Policy proceeds. Thus, the state court cases cited by Sun Life in support of its argument[2] are inapposite, and certainly are not binding on this Court.

Further, Sun Life argues that, "in the absence of an otherwise specific remedy, the typical remedy for a party's failure to comply with a domestic relations order is to file for contempt—not to seek relief from a third party who was unaware of the divorce decree." Doc. #50, PAGEID #706 (citing *Waites v. Waites*, 5th Dist. Fairfield, No. 15-CA-1, 2015-Ohio-2916; *Byron v. Byron*, 10th Dist. Franklin No. 03AP-819, 2004-Ohio-2143; *Saeks v. Saeks*, 24 Ohio App.3d 67, 493 N.E.2d 280 (2d Dist. Montgomery)). However, in all three of the cited cases, a party to the divorce decree sought a contempt order against an ex-spouse for non-compliance with that decree. *Waites*, 2015-Ohio-2916, at ¶ 2; *Byron*, 2004-Ohio-2143, at ¶ 1; *Saeks*, 24 Ohio App. 3d at 69. Sun Life cites no caselaw in support of its argument that a non-party to a divorce decree must file a contempt motion to enforce its rights under that decree.

Moreover, to impose such strict limitations on remedies would not only violate ERISA's plain language and statutory intent, it may also be illogical in this instance. Sierra, as noted above, set up Bruce's estate. Doc. #19-4, PAGEID #340. If Sierra served as the administratrix of Bruce's estate, then she would represent the estate in any claim or legal proceeding against the estate. Thus, Sierra, in an individual capacity, may have been forced to pursue a claim against herself in a representative capacity. Finally, and most importantly, the gravamen of Sierra's counterclaims and motion is not

---

[2] Doc. #50, PAGEID #705-06 (citing *Hohertz*, 802 N.W.2d at 146 (Neb. App. 2011); *Harper v. Harper*, 8th Dist. Cuyahoga No. 96454, 2011-Ohio-5276; *Kelly v. Kelly*, 2d Dist. Champaign No. 2008 CA 28, 2009-Ohio-6586; *J.F. v. D.B.*, 165 Ohio App.3d 791, 2006-Ohio-1175, 848 N.E.2d 873 (9th Dist.); *McGee v. McGee*, 168 Ohio App. 3d 512, 2006-Ohio-4417 860 N.E.2d 1054 (9th Dist.); *Franchini v. Franchini*, 11th Dist. Geauga No. 2002-G-2467, 2003-Ohio-6233; *Zamonski v. Wan*, 2d Dist. Montgomery No. 19392, 2003-Ohio-780; *Stadalsky*, 1987 WL 7885, at *3.

that Bruce deprived her of her rights under the Decree by not changing the beneficiary on the Policy. Rather, it is that Sun Life, in paying the Policy proceeds to Richard in contravention of a valid QDRO, violated ERISA, and that Sun Life should be ordered to pay her the Policy proceeds. Doc. #4, ¶¶ 25, 29-30, PAGEID #156-57. Sierra's claims are properly brought under ERISA, and the Decree does not prevent her from bringing those claims.

**2.      Bruce and Bridget's Failure to Comply with Article IX does not Extinguish Sierra's Claim Against Sun Life**

Sun Life claims that Bruce and Bridget failed to comply with the Decree's requirements to change the name of the beneficiary (Bruce), monitor the beneficiary designation (Bruce and Bridget), and contact Premier or Sun Life to ensure that the beneficiary designation had been changed (Bridget). Doc. #50, PAGEID #707-08 (citing Doc. #19-2, PAGEID #308-09; Doc. #29-1, PAGEID #574-94. Sun Life argues that, regardless of whether the Decree is a QDRO, Bruce and Bridget's failure to comply with Article IX extinguished any rights that Sierra may have had vis-à-vis Sun Life, which was not a party to the Decree, was not in privity with any party to the Decree, and was unaware of the Decree until after Bruce's death. *Id.*, PAGEID #710-11.

As above, the cases cited by Sun Life are inapposite. Both *Ballard Grp., Inc. v. DNP Int'l Inc.*, No. 1:05-cv-547, 2006 WL 3168348, at *1 (S.D. Ohio Nov. 1, 2006) (Barrett, J.), and *Schrader v. Schrader*, 4th Dist. Hocking No. 03CA20, 2004-Ohio-4104, deal with state common law issues of privity and whether a contract may be enforced against a particular non-party to that contract. While Sierra may not bring a breach of contract action with respect to the Decree against Sun Life, she has brought an ERISA

18

claim regarding denial of benefits, not a claim for common law breach of contract.

Moreover, because the Decree has been determined to be a QDRO, "the beneficiary is

determined by its language alone, without respect to any beneficiary designation form.

The only requirement is that the ERISA plan administrator must receive the QDRO."

*Metro. Life Ins. Co. v. Cronenwett*, 162 F. Supp. 2d 889, 900 n.5 (S.D. Ohio 2001)

(Rice, C.J.). As discussed above, a QDRO may not be used solely to extinguish an the

rights of an intended beneficiary under that QDRO. Doc. #58, PAGEID #1010 (citing

*Kennedy*, 555 U.S. 285). Thus, upon Bruce's death and receipt of the Decree, Sun Life

was required—under ERISA, rather than any common law contract principle—to pay

benefits to Sierra. Any noncompliance with Article IX by Bruce or Bridget cannot be

used to limit Sierra's rights under ERISA.

While Sun Life was not aware of the Decree until after Bruce's death, the record

unambiguously shows that Sierra's attorney provided Sun Life with a copy of the Decree

at least five weeks prior to its payment of the Policy's basic proceeds to Richard. Doc.

#19-3, PAGEID #332-34; Doc. #29-1, PAGEID #574.[3] The facts that Sun Life was not a

party to the Decree, and was unaware of the Decree's existence until after Bruce's

death, do not, by themselves, defeat Sierra's counterclaims, and to the extent that Sun

Life's motion for judgment is based on those facts, it must be overruled.

---

[3] Both cases cited by Sun Life in support of its argument that it had insufficient notice, Doc. #50, PAGEID #713, are readily distinguishable. Sun Life concedes that, in *Winters v. Kutrip*, the claimant did not submit a copy of the relevant QDRO to the insurer until "two weeks after the plan ha[d] paid benefits to the named beneficiary in accordance with the terms of the plan." *Id*. (citing *Winters*, No. 01-3751, 47. F. App'x 143, 147-48 (3d Cir. 2002)) The issue before the Court in *Robinette v. Hunsecker*, was whether a divorce decree modified posthumously could qualify as a valid QDRO. 66 A.3d 1093, 1104-05, 212 Md. App. 76 (Md. Ct. Spec. App. 2013). In this case, the Decree was a valid QDRO, and was entered into more than seven years prior to Bruce's death.

### 3.    Richard's Right to Policy Proceeds Never Vested

As discussed above, Sun Life was not made aware of the Decree's existence until after Bruce's death.  Under Ohio law, the rights of a life insurance policy's designated beneficiary vests upon the insured's death, and any attempt to change the beneficiary after that point is ineffective.  Doc. #50, PAGEID #711-12 (citing *Stone v. Stephens*, 92 Ohio App. 53, 57, 110 N.E.2d 18 (2d Dist. 1950)).  Sun Life argues that principle applies even when, as here, the Policy is governed by ERISA.  Consequently, Sun Life claims, Richard's expectancy interest in the Policy proceeds vested upon Bruce's death, and Sierra's claim with respect to the Policy proceeds was untimely, even assuming *arguendo* that she would have otherwise been the proper payee.  *Id.*, PAGEID #712 (citing *Chastain v. AT&T*, No. CIV-04-0281-F, 2007 WL 3357516, at *10 (W.D. Okla. Nov. 8, 2007); *Foss v. Lucent Tech. Inc.*, No. 03-CV-5017(DMC), 2006 WL 3437586, at *9 (D.N.J. 2006); *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379, 386 (D.S.C. 1993)).  Sierra claims that, because the Decree is a QDRO, Bruce's designation of Richard "as the beneficiary of the basic life insurance benefits was unenforceable, and [Richard] has no interest in the Policy benefits that could ever vest."  Doc. #58, PAGEID #1026.

As discussed above, the beneficiary listed in the QDRO is the proper payee, regardless of the beneficiary named on the Policy's designation form.  *Cronenwett*, 162 F. Supp. 2d at 900 n.5.  Thus, Sierra is not attempting to alter the beneficiary designation or claim that her rights vested prior to Bruce's death.  Rather, by operation of law, the beneficiary designation changed once the Decree was entered in 2006, and upon entry, Sierra obtained an expectancy interest in the Policy proceeds.  That expectancy interest vested upon Bruce's death, and because Sun Life received the

20

QDRO prior to payment, it was obligated to pay the insurance proceeds to Sierra, rather than to Richard.

### 4.    Remand to Sun Life is Unnecessary

Sun Life argues that, if the Court were to determine that it had engaged in a flawed decision-making process in determining that Richard was the proper payee of the Policy proceeds, then the matter should be remanded to Sun Life for further review, rather than the Court issuing an order awarding benefits to Sierra. Doc. #50, PAGEID #715-16 (citing *Javey v. Lucent Tech., Inc. LTD Plan*, 741 F.3d 686, 699 (6th Cir. 2014); *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006)). However, "where a plan administrator properly construes the plan documents but arrives at the wrong conclusion that is simply contrary to the facts, a court should award benefits." *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373-74 (6th Cir. 2009) (internal quotation marks and citation omitted). Whether Sun Life undertook a flawed-decision making process in its initial determination is irrelevant; no additional review by Sun Life is necessary when the relevant documents compel the following conclusions as matters of law: (1) that the Decree is a QDRO; and (2) Sierra is the only proper payee of the Policy proceeds. Accordingly, the Court will enter an order mandating payment to Sierra, without remanding to Sun Life for rehearing.[4]

---

[4] As Jenkins stated in an October 10, 2013, email to Victory, "[t]he basic life beneficiary that [is] printed on our forms [is] also applicable for the optional life beneficiary." Doc. #19-4, PAGEID #349 (emphasis removed). Thus, Sun Life must pay $48,000 in basic proceeds and $191,000 in optional proceeds, plus interest, to Sierra.

## C.    Sierra has no Viable Claim for Statutory Damages

Sierra claims that, despite twice submitting her claim for Policy benefits and requesting Policy documents from Sun Life directly on two other occasions, Sun Life refused to review her claim or to send her a copy of the Policy and claim forms to which she was allegedly entitled under the law.  Doc. #51, PAGEID #762-63 (citing Doc. #19-4, PAGEID #354-59, Doc. #29-1, PAGEID #574-75).  Sierra argues that Sun Life, in refusing to respond to Sierra's requests for documents, violated 29 U.S.C. § 1024(b)(4)(B), *id*., PAGEID #765, and that Sun Life's refusal to investigate her claim for Policy benefits "arbitrarily, recklessly, indifferently, or intentionally disregarded Sun Life's duties to Ms. Jackson."  *Id*., PAGEID #766.  Sierra claims that those refusals subject Sun Life to statutory damages under ERISA.  *Id*., PAGEID #763-64 (citing 29 U.S.C. § 1132(c)(1)).

Only plan administrators may be held liable for statutory damages under 29 U.S.C. § 1132(c)(1).  *Butler v. United Healthcare of Tennessee*, 764 F.3d 563, 569-70 (6th Cir. 2014).  A plan administrator is "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; [or] (ii) if an administrator is not so designated, the plan sponsor."  29 U.S.C. § 1002(16)(A).  The term "plan administrator" is not defined within the Policy or elsewhere in the administrative record, and Sun Life claims that Premier is the plan sponsor, which is defined as "the employer in the case of an employee benefit plan established or maintained by a single employer," 29 U.S.C. § 1002(16)(B)(i).  Thus, Sun Life argues, as it is neither the Plan administrator nor Plan sponsor, statutory damages may not be assessed against it.  Doc. #50, PAGEID #716 (citing *Caffey v. Unum Life Ins. Co.,* 302 F.3d 576, 584-85 (6th Cir. 2002)) (internal quotation marks and citations omitted) (when a plan administrator is

22

not specified, "ERISA's default provision dictates that [employer], not [insurer], is the plan administrator. . . . Consequently, even if [plaintiff] could show that [insurer] failed to respond to written requests for a summary plan description, [insurer] would not be liable for statutory damages under § 1132(c).").

The Policy states that "[t]he Plan Administrator has delegated to Sun Life its entire discretionary authority to make all final determinations regarding claims for benefits under the benefit plan insured by this Policy." Doc. #19-2, PAGEID #296. Sierra argues that, given the complete delegation by Premier, and that "it is undisputed that Sun Life is required to pay claims under the Policy from its own assets[,] . . . Sun Life is the administrator of the Policy." Doc. #58, PAGEID #1028 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)). However, for two reasons, *Glenn* is inapplicable, and Sierra's claim for statutory damages against Sun Life fails as a matter of law. <u>First</u>, in *Glenn*, both the claimant and the insurer understood the insurer to be the plan administrator for the policies in question. 554 U.S. at 108. However, "[t]he role of claims administrator usually does not confer on that party the status of plan administrator. Quite often, indeed, the claims administrator and the plan administrator are not the same." *Butler*, 764 F.3d at 570 (6th Cir. 2014) (internal quotation marks and citation omitted). It is undisputed that Sun Life is the claims administrator, "the entity that 'administers claims for employee welfare benefit plans and has the authority to grant or deny claims.'" *Id.* (quoting *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006)). However, the Policy's plain language demonstrates unambiguously that Sun Life is not the plan administrator—if it were, then

there would be no need for the "Plan Administrator [to] delegate[] to Sun Life its entire discretionary authority." Doc. #19-2, PAGEID #296 (emphasis added).

Second, *Glenn* involved a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), not for statutory damages under 29 U.S.C. § 1132(c). 554 U.S. at 108. *Glenn* did not address the issue of an entity against whom statutory damages could be assessed under 29 U.S.C. § 1132(c), and even after *Glenn*, the Sixth Circuit has stated consistently that only plan administrators may be subject to such damages. *Butler*, 764 F.3d at 570; *McCollum v. Life Ins. Co. of N. Am.*, No. 11-2257, 495 F. App'x 694, 705 (6th Cir. 2012). Because Sun Life is not the Policy's plan administrator, Sierra's motion for judgment is overruled with respect to her counterclaim for statutory damages.

### D.    Sun Life's Equitable Claim Against Richard

In Count I of its Complaint, Sun Life, pursuant to 29 U.S.C. § 1132(a)(3), sought "to enjoin Richard E. Jackson from dissipating the Plan Benefits and to order Richard E. Jackson to deposit the Plan Benefits with the registry of this Court." Doc. #1, ¶ 24, PAGEID #74. In its motion for judgment, Sun Life stated that it "reserves the right to seek reimbursement from Richard Jackson for the Plan Benefits previously paid to him, as equitable relief," Doc. #50, PAGEID #719, if the Court were to determine that Sierra, and not Bruce, was the proper payee of the Policy proceeds. 29 U.S.C. § 1132(a)(3) permits an action "by a . . . fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations." Section IV of the Policy requires Sun Life to "pay the amount of Life Insurance in force on the Employee's date of death," Doc. #19-1, PAGEID #275, and the Court has already determined that Sierra, not Richard, is

24

the proper payee, and that Richard has no rights to the proceeds. As dissipation of the Policy proceeds by Richard would violate the Policy, an injunction to prevent such action is proper under 29 U.S.C. § 1132(a)(3). Thus, Sun Life's motion for judgment is sustained in part; Richard is enjoined from further dissipating the Policy proceeds, and must deposit the remaining proceeds, if any, with the Clerk of Court.

Sun Life's attempt to obtain reimbursement from Richard for any funds already spent, however, presents a distinct issue. Sun Life relies on *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), in which the respondent insurer had paid the petitioners' medical expenses resulting from an automobile accident, and petitioners subsequently received a settlement from the tortfeasors. The insurer pursued an equitable claim against the petitioners under 29 U.S.C. § 1132(a)(3) to recoup its payments. *Sereboff*, 547 U.S. at 360. The Court noted that the petitioner sought to recover funds in a specifically identifiable account, and that the relevant, ERISA-governed plan required that the insureds reimburse the insurer for any payments made under the above circumstances. Moreover, the Court noted that the proceeds of the respondent's payments were within the possession and control of petitioners, who had set aside the funds in a separate account pending the outcome of the litigation. *Id*. at 360, 362-63. The Court held that that respondent's claim, while seeking money damages and sounding in contract, was actually a claim for an equitable lien on those specific funds, and, thus, an action under 29 U.S.C. § 1132(a)(3) to recover those funds was appropriate. *Id*. at 368-69.

However, unlike in *Sereboff*, there is no restriction in the Policy that set forth circumstances under which repayment of the Policy proceeds is required by the payee.

Richard, in his motion for judgment, argues that "[t]he payments did not include any restrictions on [his] immediate or elected use of life insurance proceeds." Doc. #53, PAGEID #951. Sun Life does not cite any caselaw suggesting that this Court may impose an equitable lien to the extent that the Policy proceeds have already been dissipated, and where the payee has not done so in violation of any term of the Plan.

Moreover, even if 29 U.S.C. § 1132(a)(3) would allow for the imposition of an equitable lien under the above circumstances, Sun Life's claim for such a lien with respect to proceeds already dissipated may not be possible in light of the Supreme Court's decision in *Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. ---, 136 S.Ct. 651, 193 L.Ed.2d 556 (2016), in which the Court clarified the limits of the *Sereboff* holding and, consequently, the equitable relief available to Sun Life. Specifically, the Court stated that *Sereboff*:

> [L]eft untouched the rule that <u>all</u> types of equitable liens must be enforced against a specifically identified fund in the defendant's possession. . . . That is because the basic premise of an equitable lien by agreement is that, rather than physically taking the plaintiff's property, the defendant constructively possesses a fund to which the plaintiff is entitled.

136 S.Ct. at 659-60 (emphasis in original). Unlike the petitioners in *Sereboff*, there is no evidence as to whether Richard kept the Policy proceeds in a separate account or if he comingled the proceeds with his other accounts. Nor is there evidence that any of Richard's assets are fairly traceable to the Policy proceeds. Absent a particular fund or the ability to identify and trace the Policy proceeds, it is uncertain, in light of the ruling in *Montanile*, whether Sun Life can bring an equitable claim under ERISA to recoup such proceeds.

Accordingly, Richard is required to submit, within thirty (30) days of this Entry, an accounting of the remaining Policy proceeds, and evidence of any separate accounts in

26

which he has maintained Policy proceeds, or of any comingling of the Policy proceeds

and his other accounts. Sun Life and Richard must submit, within thirty (30) days of this

Entry, briefing on the issue of whether, in light of *Montanile*, Sun Life's claim with

respect to the Policy proceeds that Richard has already dissipated is equitable or legal

in nature, and whether such a claim may be brought under 29 U.S.C. § 1132(a)(3).


### E. Sierra's Crossclaim for Conversion Properly Dismissed without Prejudice

In her motion for judgment, Sierra declared her intention to "seek leave of the

Court to dismiss [her] conversion claim [against Richard] without prejudice," Doc. #51,

PAGEID #767, and, on June 29, 2016, moved, pursuant to Rule 41(a)(2), to dismiss the

crossclaim. Doc. #62. There is no indication that Sierra complied with the local rule

requiring her, prior to filing a Rule 41(a)(2) motion, to consult with Richard to determine

whether the he would consent to a dismissal without prejudice. S.D. Ohio Civ. R. 7.3

Nonetheless, Richard, in his memorandum *contra*, did not object to the lack of

consultation or to the relief sought—dismissal without prejudice. Doc. #64. Rather, in

the only portion of his memorandum pertaining to Sierra's motion to dismiss, Richard

states that Sierra's motion "essentially reverses [her] original position on the 'necessary'

status of Richard Jackson and [his] continued laborious involvement [in the case]. . . .

The original [necessary] status was unfounded." *Id.*, PAGEID #1058. Richard's

argument is not persuasive. As noted in her motion for judgment, and by the Court

above, "[t]he record before the Court does not definitively show whether the funds paid

by Sun Life to Defendant Richard E. Jackson have been commingled." Doc. #51,

PAGEID #767. Sierra's attorney concluded that, in light of a recent appellate court

27

decision, Ohio law "appears to prohibit a conversion claim as to funds if they have been commingled." *Id*. (citing *Ihenacho v. Ohio Inst. of Photography and Tech.*, 2d Dist. Montgomery CA No. 24191, 2011-Ohio-3730, ¶ 26). The above legal conclusion of Sierra's counsel constitutes good cause to dismiss the conversion claim without prejudice.

Moreover, to the extent that Richard is objecting to his continued involvement in this case, he cannot reasonably argue that he is prejudiced by the dismissal of a claim against him. Accordingly, Sierra's Rule 41(a)(2) motion is sustained, and her crossclaim for conversion against Richard is dismissed without prejudice.[5]

### F.    Summation

The Jackson Decree is a QDRO, and is enforceable against Sun Life. Sierra's rights in the basic and optional Policy proceeds vested upon Bruce's death. As Sun Life had notice of the QDRO prior to payment of the proceeds, it was required to pay those proceeds to Sierra. However, Sun Life is not the Policy's plan administrator, and, therefore, is not subject to statutory damages. Thus, Sierra's motion for judgment is sustained with respect to her claims for declaratory judgment and for recovery of benefits, and is overruled with respect to her claim for statutory damages.[6] Sierra's motion for voluntary dismissal without prejudice of her crossclaim against Richard is

---

[5] The Court has reached the above decision without evaluating the other arguments in Richard's memorandum *contra*, which, as Sun Life correctly notes, "are unrelated to Ms. Jackson's motion[,] and Sun Life has responded to these allegations on numerous occasions." Doc. #65, PAGEID #1062.

[6] Sierra, in her reply memorandum "reserves the right to petition for an award of attorneys [fees] if the Court grants judgment in her favor." Doc. #58, PAGEID #1029. The Court may, in its discretion, award attorney fees to a prevailing beneficiary in an ERISA case. *First Trust Corp. v. Bryant*, 410 F.3d 842, 850 (6th Cir. 2005). Accordingly, Sierra may file a petition, post-judgment, to recover attorney fees, demonstrating good cause as to why fees should be awarded in this case, and submitting a lodestar calculation for the proper amount of fees.

sustained. Sun Life's motion for judgment is overruled with respect to its claim for declaratory judgment; its motion with respect to its claim for injunctive relief is sustained to the extent that Sun Life seeks to enjoin Richard from further dissipating the Policy proceeds, and is not ruled upon to the extent that Sun Life is seeking to recover from Richard Policy proceeds that have already been dissipated.

The specific relief ordered by the Court with respect to the above conclusions is set forth more fully below.

## IV.    RICHARD'S MOTION

Richard, in his *pro se* motion for judgment, seeks $323,650.00 in compensatory damages to account for the time spent and opportunity costs incurred in defending this case. Doc. #53, PAGEID #953-54. Also, Richard renews his claim that he was never a proper party to the action. *Id*., PAGEID #953.

The Court notes that Richard has raised the argument that he is not a proper party in two previous motions to dismiss. Doc. #3, 7. The Court overruled those motions as "lacking any legal or evidentiary basis upon which to entertain [them] at this stage of the proceedings." Doc. #23, PAGEID #487. However, even assuming that such an argument is ripe for the Court's review at this juncture, Richard's argument is still not persuasive. As Sun Life correctly points out, Richard, as the Policy's named beneficiary and payee, has been a necessary party in the litigation to this point, "because the Court could [have] determine[d] that he was incorrectly paid benefits," Doc. #57, PAGEID #1004, and the Court has determined precisely that. Thus, Sun Life must pay Sierra the basic and optional Policy proceeds, despite having already paid

29

those proceeds to Richard. Moreover, Sun Life's claim for equitable relief against Richard remains pending before this Court.

Richard's claim for damages to compensate for "the loss of production time and income-generating resources," Doc. #53, PAGEID #954, is futile. As this Court previously noted, Richard has not brought any claim against Sun Life or Sierra. Doc. #40, PAGEID #658. Moreover, the Court has determined that Sierra, not Richard, was the proper payee of the Policy proceeds, and has enjoined Richard from further dissipating the proceeds. As Richard is not the prevailing party in any judgment, he is not entitled to costs under Fed. R. Civ. P. 54. Therefore, Richard's motion for judgment is OVERRULED.[7]

V.    CONCLUSION

For the foregoing reasons:

1.    Sierra's Motion for Judgment, Doc. #51, is OVERRULED with respect to her claim for statutory damages and SUSTAINED in all other respects;

2.    Sun Life's Motion for Judgment, Doc. #50, is OVERRULED with respect to its claim for declaratory judgment, and is SUSTAINED IN PART and NOT RULED UPON IN PART with respect to its claim for injunctive relief;

3.    Richard's Motion for Judgment on the Administrative Record, Doc. #53, is OVERRULED;

---

[7] The Court notes that none of the materials submitted by Richard in his January 2, 2016, letter to the Court supplementing his motion for judgment, Doc. #59, alter its conclusions that Richard was a proper party to this case and that Richard is not entitled to judgment, costs or attorney fees. Thus, Sierra's motion to strike Richard's letter, Doc. #61, is overruled as moot.

4. Sierra's Motion to Strike Richard's January 2, 2016, Letter with Attachments, Doc. #61, is OVERRULED AS MOOT;

5. Sierra's Motion to Dismiss Crossclaim Against Defendant Richard E. Jackson Without Prejudice Per Fed. R. Civ. P. 41(a)(2), Doc. #62, is SUSTAINED;

6. Richard is enjoined from further dissipating the Policy proceeds, and is ordered to deposit the remaining proceeds, if any, with the Clerk of Court, within thirty (30) days of this Entry;

7. Richard is ordered to submit, within thirty (30) days of this Entry, an accounting of the remaining Policy proceeds, and evidence, if any, of a specific account in which he maintained the Policy proceeds, or of any comingling of the proceeds with his general accounts;

8. Sun Life and Richard are ordered to submit, within thirty (30) days of this Entry, briefing on the issue of whether, in light of *Montanile*, Sun Life's claim with respect to Policy proceeds already dissipated is equitable or legal in nature and, whether such a claim may be brought properly under 29 U.S.C. § 1132(a)(3);

9. Sun Life is ORDERED to remit to Sierra forty-eight thousand dollars ($48,000.00) in basic proceeds and one hundred ninety-one thousand dollars ($191,000.00) in optional proceeds, plus interest, from the date of Bruce's death, within ninety (90) days of this Entry;

10. Sierra may, within thirty (30) days of ultimate judgment, submit a petition for attorney fees and a supporting lodestar calculation; and

11.    Judgment shall ultimately enter in favor of Sierra and against Sun Life and

Richard.


Date: August 5, 2016                                   _____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE