IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUN LIFE ASSURANCE
COMPANY OF CANADA,

    Plaintiff,

    v.

RICHARD E. JACKSON, et al.,

    Defendants.

:
:
:
:
:

Case No. 3:14-cv-41

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT AND COUNTER-CLAIMANT SIERRA N. JACKSON'S MOTION FOR ATTORNEY FEES AND PREJUDGMENT INTEREST (DOC. #83); SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT AND COUNTER-CLAIMANT SIERRA N. JACKSON'S SUPPLEMENTAL MOTION FOR ATTORNEY FEES AND POST JUDGMENT INTEREST (DOC. #91); SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT AND COUNTER-CLAIMANT SIERRA N. JACKSON'S SECOND SUPPLEMENTAL MOTION FOR ATTORNEY FEES AND POST JUDGMENT INTEREST (DOC. #100); JUDGMENT TO ENTER IN FAVOR OF DEFENDANT SIERRA N. JACKSON FOR ATTORNEY FEES, PREJUDGMENT INTEREST AND POST JUDGMENT INTEREST ON ALL AMOUNTS AWARDED

---

This matter is before the Court on the motions of Defendant and Counter-Claimant Sierra N. Jackson ("Sierra") for attorney fees, prejudgment and post judgment interest and costs. Docs. ##83, 91, and 100. This Court has reviewed these motions, along with the memoranda in opposition (Docs. ##96 and 102) filed by Plaintiff Sun Life Assurance Company of Canada ("Sun Life") and Sierra's reply. Doc. ##98 and 104.

Sierra seeks attorney fees for all legal time and expenses incurred from July 23, 2013, (Doc. #83-3, PAGEID#1170), through the appellate proceedings. Doc. ##91 and 100. Additionally, Sierra seeks prejudgment interest from March 1, 2013, through January 12, 2017, (Doc. #83, PAGEID##1161-62), and post judgment interest and costs at the rate specified in 28 U. S. C. § 1961 on all amounts awarded over and above that specified in the Court's Entry of January 12, 2017. Doc. #91, PAGEID#1239.

For the reasons set forth below, this Court sustains Sierra's motion for attorney fees and prejudgment interest (from March 1, 2013, through and including January 12, 2017) (Doc. #83); sustains, in part, and overrules in part Sierra's supplemental motion for attorney fees and post-judgment interest (Doc. #91); and sustains, in part, and overrules, in part, her second supplemental motion for attorney fees and post judgment interest. Doc. #100.[1]

I. **Procedural Background**

In its Decision and Entry of August 5, 2016, this Court found that Sierra was the proper payee of an insurance policy managed by Sun Life, the proceeds of which Sun Life had previously paid to Defendant Richard E. Jackson. Doc. #66.

---

[1] Time entries in the legal statements submitted by James D. Brookshire, Doc. #91-2, PAGEID#1249 and Doc. #100-4, PAGEID#1364 and David L. Mikel, Doc. #91-6, PAGEID##1264-65 and #100-5, PAGEID##1368-1369, contain overlapping time entries. The Court has made the necessary deductions to account for these duplicative entries. As will be explained in more detail later in this ruling, the Court has also made some further deductions and adjustments to the amounts requested.

2

The insurance proceeds consisted of a basic life policy ($48,000.00) and the optional life policy ($191,000.00). Because Sun Life stated it intended to appeal the August 5, 2016, Decision and Entry, this Court, among other things, ordered Sun Life to post a supersedeas bond in the amount of two hundred thirty-nine thousand dollars ($239,000.00) upon filing its notice of appeal. Doc. #79, PAGEID#1141. The Court also stated that, within 30 days of judgment being entered, Sierra's attorney could submit a motion for an award of prejudgment interest and attorney fees, along with a lodestar calculation for the fees. *Id.*

On February 10, 2017, Sierra filed her first motion for attorney fees and prejudgment interest. Doc. #83. The total requested for attorney fees for the time period of July 23, 2013 through August 25, 2016, was $104,260.00. Doc. #83, PAGEID##1170-1181. Sierra sought prejudgment interest in the amount of $111,991.42 from March 1, 2013, through the end of the third quarter of 2016. Doc. #83, PAGEID#1162. Sierra based her prejudgment interest calculation on Sun Life's "operating rate of return" that was apparently published on its corporate website. Doc. #83, PAGEID##1161-62.

Sun Life filed its appeal in the Sixth Circuit and on December 13, 2017, the Sixth Circuit affirmed this Court's August 5, 2016, Decision and Entry. *Sun Life Assurance Company of Canada v. Jackson,* 877 F. 3d 698 (6th 2017). A rehearing en banc was denied by the Sixth Circuit on January 18, 2018. *Id.*

On January 26, 2018, Sierra filed a supplemental motion for attorney fees and post judgment interest (Doc. #91) for her two attorneys, now in separate law

3

firms, for $49,691.68. This amount represented the total amount of legal fees and expenses for both attorneys for the time period from February 6, 2017, through January 22, 2018. Doc. #91, PAGEID##1245-1250 and 1264-1265.

Sun Life then filed a petition for a Writ of Certiorari in the United States Supreme Court which was denied on June 11, 2018. *Sun Life Assur. Co. of Canada v. Jackson*, 138 S. Ct. 2624 (Mem) 2018 WL 1211236.

On June 28, 2018, Sierra's attorneys filed a supplemental motion for attorney fees and post judgment interest. Doc. #100. This second supplemental motion consisted of the legal fees and expenses for a third attorney hired to litigate the United States Supreme Court filing as well as Sierra's two other attorneys. The total amount of legal fees and expenses for all three attorneys was $40,974.36 and encompassed the time period from January 3, 2018, through June 12, 2018. Doc. ##100-2-100-5, PAGEID##1358-1370.

## II. Legal Discussion

### A. Attorney Fees

Although a court, in its discretion, may award attorney fees in ERISA actions to a plan participant, beneficiary or fiduciary, the Sixth Circuit has rejected a presumption that attorney's fees should ordinarily be awarded to the prevailing plaintiff. 29 U.S.C. § 1132(g)(1); *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir.1996); *Gibbs v. Gibbs*, 210 F.3d 491, 500–03 (5th Cir.2000) (discussing precedent from other circuits), as cited in *First Trust Corp. v. Bryant,* 410 F. 3d 842,

4

851 (6th Circuit 2004). Pursuant to § 1132(g)(1), the first question to determine a party's eligibility for attorney fees and costs is whether the prevailing party has achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Insurance Co.,* 560 U. S. 242, 243 (2010). In this case, while Sierra achieved nearly complete success on the merits, in order for her to be awarded attorney fees, she must still satisfy the five-factor test set forth in *Sec. of Dept. of Labor v. King*, 775 F.2d 669, (6th Cir.1985), as cited in *First Trust Corp.* at 851. Although these five factors are not statutory and represent a flexible approach with no single factor being determinative, this Court must consider each factor before exercising its discretion on the issue of attorney fees. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642–43 (6th Cir. 2006). The *King* factors are as follows:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *King* at 669.

### 1. Culpability or Bad Faith

Under the first *King* factor, the Court must determine "the degree of the opposing party's bad faith or culpability." *Id.* Bad faith has been defined by the Sixth Circuit as "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Benkert v. Med. Protective Co.*, 842 F.2d 144, 149 (6th Cir.1988). Although "[A]n arbitrary and capricious denial of benefits does

5

not necessarily indicate culpability or bad faith," ignoring overwhelming evidence and denying a claim based on a theory that lacked a legitimate foundation can amount to culpability or bad faith. *Hefferman v. UNUM Life Ins. Co of America* 101 Fed. Appx. 99, 109 (6th Cir. 2004) (insurer ignored overwhelming evidence of medical disability and denied claim without contrary medical evidence to support its position). Similarly, a plan administrator's failure to conduct a "full and fair investigation," including its failure to consider the correct policy, "amounted to arbitrary and capricious conduct that rose to the level of culpability required for a fee award." *McKay v. Reliance Standard Life Ins.*, 428 Fed. Appx. 537, 546 (6th Cir. 2011) (plan participant entitled to fee award due to failure of plan administrator to comply with ERISA guidelines in its initial review of claim even though court later upheld denial of benefits). Culpability in the context of ERISA for an award of attorney fees also includes conduct "[w]here a plan administrator engages in an inadequate review of a beneficiary's claim or otherwise acts improperly in denying benefits." *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377 (6th Cir. 2009). (erroneous interpretation of terms in a plan document was not the equivalent of an inadequate review of a beneficiary's claim or acting improperly in denying benefits)

Sierra argues that Sun Life's conduct in reviewing her claim was arbitrary, reckless, indifferent, or in intentional disregard of her rights as a beneficiary. *Benkert v. Med. Protective Co.* at 149. The Court, however, does not find that Sun Life's handling of Sierra's claim amounted to bad faith; instead, the Court finds

that the evidence, as seen below, establishes that Sun Life did not conduct a "full and fair investigation" of her claim, *McKay v. Reliance Standard Life* at 546, that the review that Sun Life did conduct was "inadequate" and that it acted "improperly in denying benefits." *Shelby Health Care*, at 377.

The record before this Court shows that repeated attempts were made by Sierra to contact Sun Life in order to have her claim processed. Specifically, on July 17, 2013, a letter from Sierra's attorney was sent to the insured/decedent's employer. Doc. 19-4. PAGEID#354. In the July 17 letter, Sierra's attorney requested a claim form to submit a claim for her father's insurance proceeds and included with the request a copy of the 2006 judgment entry and decree of divorce upon which Sierra's claim was based. *Id*. On July 19, 2013, the employer forwarded the letter and documents received from Sierra's attorney to Sun Life. Doc. #19-4, PAGEID#341-342. On July 30, 2013, although Sun Life had contact information for Sierra's attorney and was aware of her claim, they instead contacted the insured/decedent's mother in order to obtain an address for Defendant Richard Jackson, the named beneficiary on the basic insurance policy. Doc. #19-4, PAGEID#340[2] Although Sierra's attorney tried to make direct contact with someone at Sun Life, it was not until August 26, 2013, that Sierra was able to send written notice of her claim along with a certified copy of the 2006 judgment entry and decree of divorce sent directly to Sun Life in Cleveland, Ohio. Doc. #19-4,

---

[2] Sun Life noted in the file that on July 30, 2013, it also learned from the mother that Sierra had set up an estate for her father.

PAGEID#354-55. In the August 26, 2013 letter, Sierra made another request for a claim form. Doc. #19-4, PAGEID#355. On August 28, 2013, Sierra spoke with the Sun Life employee in Cleveland and was assured that Sierra's notice would be forwarded to the appropriate persons at Sun Life, that the policies at issue had not been disbursed, and that Sierra's request to speak with Sun Life's legal counsel would be passed along. *Id.*

Despite the fact that Sun Life was aware of the claim from Sierra and on September 17, 2013, stated in an inner office email that they had "a letter from an attorney and a divorce decree sent in at claim time" with an acknowledgement that the daughter, Sierra, was 18 years old, Doc. #51-2, PAGEID#861, no claim form was ever sent to Sierra's counsel and no one from Sun Life's legal department ever reviewed the 2006 judgment entry and divorce decree. Instead, Sierra's claim was never investigated and Sun Life proceeded forward with processing the claim for Defendant Richard Jackson. The September 17, 2013, Sun Life email closes with the following statement:

> I am not pursuing this mess. I am still holding out hope that the Employer will look in their file cabinet and find who the Employee had designated for his Optional Life. We will take a prior carrier's assignment form if that is all they have. *Id.*

Despite Sierra's attempts to obtain the necessary forms in order to submit a claim, no forms were provided to her by Sun Life and a payment of $48,000.00 for the basic insurance proceeds was made to Defendant Richard Jackson on October 2, 2013. On October 11, 2013, Sun Life employees, in an email exchange,

again referenced the information from Sierra and questioned what should be done with the letter from the attorney noting that "[I]t was addressed to the Employer and not SLF." Doc. #19-4, PAGEID#347. The response from Sun Life was to proceed to pay the claim of Defendant Richard Jackson because the "attorney has not contacted us directly, nor has the daughter made a claim for benefits." *Id.* As a result, the final payment of $191,000 for the optional insurance proceeds was made on October 15, 2013 to Defendant Richard Jackson.

Based on the above, there is no dispute that Sun Life received notice from Sierra of her claim to her father's insurance along with a copy of Bruce Jackson's 2006 judgment entry and decree of divorce well before Sun Life made any payment to Defendant Richard Jackson. *Sun Life Assurance Company of Canada v. Jackson* at 705. Sun Life, however, ignored the requests from Sierra's counsel to provide her forms so she could submit a claim, did not consult with their legal department as to the legal significance of the 2006 judgment entry and decree of divorce which Sun Life had in their possession in July of 2013, and instead simply proceeded to process and pay Defendant Richard Jackson the basic and optional insurance money of $239,000.

Based on the above, the Court finds that Sun Life failed to conduct a "full and fair investigation" of Sierra's claim, *McKay v. Reliance Standard Life* at 546, that the review that was conducted was "inadequate" and that Sun Life acted "improperly in denying benefits." *Shelby Health Care*, at 377.

For the above-cited reasons, this Court finds that Sun Life's degree of culpability in its review and improper denial of benefits satisfies the first factor of *King*.

### 2. Ability to Satisfy the Award

The parties do not dispute that Sun Life would be able to satisfy any award for attorney fees in this case.

### 3. Deterrent Effect

The third factor in *King* is interpreted as requiring consideration of a fee award's "deterrent effect" on other plan administrators. *Gaeth v Hartford Life Ins. Co.*, 538 F. 3d 524, 531 (6th Cir. 2008) See, e.g., *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir.1996) (considering the deterrent effect of a fee award on "other plan administrators"); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 557 (6th Cir.1987) (analyzing whether a fee award would "deter other employers"). In this regard, "[T]his court has indeed taken the common-sense view that 'fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing.'" *Gaeth* at 532 citing *Foltice*, 98 F.3d at 937 (plan administrator's lack of bad faith and "relatively slight" degree of culpability in arbitrarily rejecting a benefits claim did not present culpability that warrants punishment or deterrence in others). As stated earlier, while this Court does not find "bad faith" on the part of Sun Life, its degree of culpability in this matter is

such that an award of attorney fees will have a deterrent effect on other plan administrators.

### 4. Conferring a Common Benefit on all Participants and Beneficiaries of an ERISA Plan or Resolving Significant Legal Question Regarding ERISA

Although there is no evidence before this Court that Sierra filed this claim in order to confer a common benefit on others, by refocusing Sun Life to the commonsense standard to be applied by courts in determining whether a divorce decree meets the requirements of a qualified domestic relations order ("QDRO"), the fourth-factor of *King* has been met. As a result, uniformity, clarity and predictability for other Sun Life beneficiaries has been promoted.

### 5. Relative Merits

The final and fifth-factor of *King*, relative merits, has been met by Sierra in this case. Sun Life received a copy of the order from Sierra's counsel well before payment was erroneously issued to the named beneficiary, Defendant Richard Jackson. *Sun Life Assurance Company of Canada v. Jackson*, at 705. While the Sixth Circuit held that the "clearly specifies" standard applies, and "demands more than a 'substantially complies' standard," the Sixth Circuit also stated that its determination "… does not require[s] Simon Says rigidity or demand magic words. One may 'clearly specify' something by implication or inference so long as the meaning is definite." *Id.* 701. The Court then cited to the Oxford English

11

Dictionary and Webster's New International Dictionary for the meaning of "to specify" and followed with everyday examples to further explain. *Id.* The Court then concluded with the statement: "A similar approach, informed by common sense and context, applies to the naming of the beneficiary of a life insurance policy." *Id.* Following the unanimous Sixth Circuit decision, Sun Life filed a motion for rehearing en banc, which was denied, and then filed a petition for Writ of Certiorari in the Supreme Court which was also denied. In short, Sierra has prevailed at every stage of the proceedings and although Sun Life contends that a "new standard" was announced by the Sixth Circuit, the appellate court rejected Sun Life's argument as to the meaning of "clearly specifies," and focused instead, as had been argued by Sierra, on the requirement that a fiduciary has an obligation to view the document in its entirety.

> After all, plan administrators act as fiduciaries and must follow reasonable procedures in distributing benefits. See 29 U. S. C. § 1056(d)(3)(G)(i). It would not be reasonable for a fiduciary to fail to consider the entirety of the decree documents being interpreted. All of this demonstrates that the statute's 'clearly specifies' test does not require, as Sun Life argues, any "strict" method of compliance.
> *Id* at 702.

The Court finds that Sierra has established this fifth-factor.

### B. Rate and Hours

Based on the evidence before this Court, which includes affidavits of counsel, and reasonable legal statements indicating the date, task, amount and individual billing, as well as the legal rates, the Court will approve an award of

12

attorney fees and expenses as follows: James D. Brookshire: $104,260.00 (Doc. #83-3, PAGEID##1170-1182), $40,391.68 (Doc. #91-2, PAGEID##1245-1249) and $5,949.36 (Doc. #100-4, PAGEID##1364-1367); David L. Mikel: $2,600.00 (Doc. #91-2, PAGEID##1264-1265) and $1,875 (Doc. #1005, PAGEID##1368-1370); and Goldstein & Russell, P.C. $25,050.00 (Doc. #100-2, PAGEID#1358).[3]

## C. Prejudgment Interest

Sierra has also moved for prejudgment interest and cites as authority *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675 (6th Cir.2013). In *Schumacher*, the Sixth Circuit determined that the plaintiffs in the ERISA case should not only receive prejudgment interest but that the rate must be calculated in order to "make them whole."

> While district courts may fashion an award in their sound discretion, such an award must consider the case-specific factors such as, but not limited to: the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation. Here, the district court failed to do so. We, therefore, reverse the district court's application of the § 1961 rate and remand on this issue. While district courts may fashion an award in their sound discretion, such an award must consider the case-specific factors such as, but not limited to: the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of

---

[3] Deductions in the requested attorney fee award are based on several entries concerning "moot court" presentations at the University of Dayton Law School to the Appellate Advocacy class, (Doc. #91-2, PAGEID#1247-48; Doc. #91-6, PAGEID#1264), duplicate entries (Doc. #91-2, PAGEID#1249; Doc. #100-4, PAGEID#1364) and failure to request reimbursement of expenses. Doc. #83.

13

money wrongly withheld; and the rate of inflation. Here, the district court failed to do so. We, therefore, reverse the district court's application of the § 1961 rate and remand on this issue. *Id.* at 687

Sierra has argued that "preventing Sun Life from being unjustly enriched" by its actions should be the deciding factor in determining the interest rate in this case. Doc. #83, PAGEID#1161. Specifically, Sierra has requested that because her claim did not arise until February 27, 2013, the "available operating rate of return data as reported on Sun Life's website" beginning March 1, 2013, should be utilized. *Id.* at PAGEID#1162. Based on Sun Life's web page report of its available operating rate of return, Sierra argues that the amount of prejudgment interest, through the third quarter of 2016, is $111,991.42.

Sun Life has argued that the applicable standard is set forth in *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740 (6th Cir. 2014). In *Hi-Lex,* an employer sued a third-party administrator who functioned as an ERISA fiduciary for over 17 years. The district court granted summary judgment and awarded the employer over $5 million in damages and prejudgment interest of over $900,000. Hi-Lex appealed the prejudgment interest because there were no factual findings as to the calculation of the prejudgment interest and argued that a § 1961 interest calculation undercompensated Hi–Lex. The Sixth Circuit upheld the district court and found no abuse of discretion occurred since, unlike *Schumacher*,

the court utilized a blended rate for each of the 17 years in calculating the prejudgment interest as opposed to a mechanical rate. Based on *Hi-Lex*, Sun Life argues that the applicable interest owed is "approximately $10,000.00" based on § 1961 interest blended over several years. Doc. #96, PAGEID##1293-94.

While Sierra is entitled to prejudgment interest, it "cannot be awarded at a rate so high that the award amounts to punitive damages:

> Although prejudgment interest is typically not punitive, an excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing.

*Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir.1998), as cited in *Rochow v. Life Ins. Co. of North America*, 780 F.3d 364 (6th Cir. 2015) (en banc).

In this case, because ERISA's remedial goal is to place a beneficiary in the position she would have occupied but for the defendant's wrongdoing, prejudgment interest should compensate Sierra for the lost interest value of money that was wrongfully withheld from her. *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir.2000) *Ford*, 154 F.3d at 618. In awarding prejudgment interest, however, this Court must consider case-specific factors as required by *Schumacher* at 685–87, before applying the federal statutory rate set forth in 28 U.S.C. § 1961. This is so even though

the "statutory post-judgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards." *Meoli v. Huntington Nat'l Bank*, 848 F.3d 716, 735 (6th Cir. 2017) (quoting *Ford v. Uniroyal Pension Plan* at 619).

In *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, (6th Cir. 2018), the Sixth Circuit found that the district court abused its discretion when it applied the federal statutory rate provided in § 1961 without considering whether that rate satisfied Title VII's remedial purposes and avoided unjustly enriching the wrongdoer.

> This is not to say that all factors will weigh evenly in all cases. For example, where the plaintiff is bound by fiduciary duties to invest conservatively, a court does not abuse its' discretion in viewing the low market-interest rates associated with 'the safe type of investment that is expected of a fiduciary' as adequate, even if the court fails to 'specifically address the [presumably higher] rate of inflation in relation to the treasury bill rate.' *Meoli*, 848 F.3d at 736. But even though a court may conclude that certain factors are more pertinent than others under certain circumstances, a court may not apply § 1961 without considering any relevant case-specific factors. *Id.* at 807.

In reviewing the case-specific factors as required by *Schumacher,* including "the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation," the Court concludes that the blended federal statutory rate as proposed by Sun Life and as set forth in 28 U.S.C. § 1961 from 2013 through 2016 is appropriate. From October 2013

16

through January 2017, both the rate of inflation and interest value of money were relatively low and given that the Court has awarded attorney fees to Sierra, she will be placed in relatively the same position she would have been had she originally been recognized as the beneficiary by Sun Life in October 2013.[4] Moreover, Sun Life was not unjustly enriched given that it, in fact, paid out $239,000, albeit to the wrong person, and will, as now determined by this Court and affirmed by the Sixth Circuit, also pay Sierra the same amount.

Based on the above and because this Court previously considered certain case specific factors in its analysis and award of attorney fees, this Court adopts Sun Life's proposal that prejudgment interest be entered from March 1, 2013, through the date of the Court's Entry of January 12, 2017 (Doc. #79), at the blended rates for each of the applicable years.

Finally, because Sierra has become unconditionally entitled to prejudgment interest and attorney fees from the date of this Decision and Entry, post judgment interest pursuant to § 1961 (a) on prejudgment interest, attorney fees and expenses, as awarded herein, are appropriate from the date of this ruling. *Associated General Contractors of Ohio, Inc. v.*

---

[4] Although the historical rate of inflation is relatively easy to determine and ranged from 1.2% to 2.5% from 2013 to 2016, Bureau of Labor Statistics, Department of Labor https://www.usinflationcalculator.com/inflation/current-inflation-rates/ https://data.bls.gov/timeseries, the "rate of return" has many variables with 10% as the average and 7% adjusted for inflation, for stock market investments and .13% for certificates of deposit in October 2013 and .15% in January of 2017. www.forecast-chart.com.

*Drabik,* 250 F.3d 482 (6th Cir. 2001); *Caffey v. Unum Ins. Co.*, 302 F.3d 576 (6th Cir. 2002)

### III. Conclusion

For all the foregoing reasons, the Court sustains Defendant and Counter-Claimant Sierra N. Jackson's Motion for Attorney Fees and Prejudgment Interest and awards attorney fees in the amount of $104,260.00 for James D. Brookshire (Doc. #83); sustains Defendant and Counter-Claimant Sierra N. Jackson's Supplemental Motion for Attorney Fees and Post Judgment Interest and awards attorney fees and expenses in the amount of $40,391.68 for James D. Brookshire and attorney fees in the amount of $2,600.00 for David L. Mikel and overrules the supplemental motion for attorney fees in the amount of $1,450.00 for James D. Brookshire and $5,250.00 for David L. Mikel (Doc. #91); sustains Defendant and Counter-Claimant Sierra N. Jackson's Second Supplemental Motion for Attorney Fees and Post Judgment Interest and awards attorney fees in the amount of $25,050.00 for Goldstein & Russell, P.C., attorney fees in the amount of $5,949.36 for James D. Brookshire and attorney fees in the amount of $1,875.00 for David L. Mikel, and overrules the supplemental

motion for attorney fees in the amount of $250.00 for James D. Brookshire and $7,850.00 for David L. Mikel (Doc. #100). [5]

Judgment is entered in favor of Defendant Sierra N. Jackson in the total amount of $180,126.04, prejudgment interest at the blended rate methodology as set forth by Sun Life (Doc. #96, PAGEID#1293), with the parties to provide a joint stipulation as to the total amount seven days from the filing of this Decision and Entry, with post judgment interest pursuant to 28 U.S.C. §1961 on the total awarded in this Decision and Entry to be calculated from the date of this ruling.

Date: September 18, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[5] Details as to the attorney fee deductions are set forth in this Decision and Entry at footnote 3.